[L.A. No. 30782. Aug. 30, 1982.]

METROMEDIA, INC., Plaintiff and Respondent, v.
CITY OF SAN DIEGO, Defendant and Appellant.

PACIFIC OUTDOOR ADVERTISING COMPANY, INC., Plaintiff
and Respondent, v.
CITY OF SAN DIEGO et al., Defendants and Appellants.

**COUNSEL**

John W. Witt, City Attorney, and C. Alan Sumption, Deputy City Attorney, for Defendants and Appellants.

Walter Wencke, Carter J. Stroud, City Attorney (Alameda), John W. Scanlon, City Attorney (Hayward), Dan Curtin, City Attorney (Walnut Creek), Roy E. June and R. R. Campagna, City Attorneys (Costa Mesa), Harry S. Fenton, Emerson Ryhner and Ronald W. Beals as Amici Curiae on behalf of Defendants and Appellants.

Gibson, Dunn & Crutcher, Theodore B. Olson, Wayne W. Smith, Hillyer & Irwin, Oscar F. Irwin, Snell & Wilmer, John J. Bouma, Guy G. Gelbron, Higgs, Fletcher & Mack, Joe N. Turner, Cahill, Gordon & Reundel and Floyd Abrams for Plaintiffs and Respondents.

Donovan, Leisure, Newton & Irvine, Mahlon F. Perkins, Jr., Weil, Guttman & Davis, Gilbert H. Weil, Phillip Tocker, Richman & Garrett, Lionel Richman, Fadem, Berger & Norton, Michael M. Berger, Brundage, Beeson & Pappy, Joseph J. Kaplon, Alex Kozinski, Ronald A. Zumbrun, Thomas E. Hookano and Elleene A. Kirkland as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

BROUSSARD, J.—The City of San Diego enacted an ordinance which, with certain exceptions, bans erection of off-site billboards[1] within the city limits; the ordinance also requires removal of existing off-site billboards after expiration of an amortization period. (San Diego Ord. No. 10795 (New Series).) On motion for summary judgment, the superior court adjudged the ordinance unconstitutional, and issued an injunction barring its enforcement. In our 1980 decision, we reversed the superior court judgment and upheld the ordinance against claims that it violated the First Amendment and exceeded the scope of the city's police power. (*Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848 [164 Cal.Rptr. 510, 610 P.2d 407].) The United States Supreme Court in turn reversed our decision, holding that the ordinance's prohibition on noncommercial billboards violated the First Amendment. (*Metromedia, Inc.* v. *San Diego* (1981) 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882].)[2] The court then remanded the case to us to determine whether the constitutionality of the ordinance could be saved by a limiting judicial construction of its terms or by severance of unconstitutional provisions from the balance of the enactment.

As we will explain, we can salvage the constitutionality of the ordinance only by limiting its scope to prohibit only commercial signs. Such

[1] The ordinance permits on-site billboards, which it describes as "either signs designating the name of the owner or occupant of the premises upon which such signs are placed, or identifying such premises; or signs advertising goods manufactured or produced or services rendered on the premises upon which such signs are placed...." (Ord. No. 10795 (New Series), section B.)

[2] Subsequent to the filing of the Supreme Court opinion, the City of San Diego enacted an interim ordinance which limits and regulates off-site advertising displays, but does not totally prohibit such signs. (San Diego Ord. No. 15551 (New Series).) The interim ordinance provides that if Ordinance No. 10795, the enactment at issue in this case, is "held valid and constitutional in whole or in part then the provisions of Ordinance No. 10795 shall prevail." (*Id.*, § 101.0760, subd. C.) Thus, the enactment of the interim ordinance does not moot the present case.

a construction would be inconsistent with the language of the ordinance and the original intent of the city council at the time of enacting the ordinance. The resulting legislation would compel the city to distinguish between commercial and noncommercial speech, a task rife with constitutional enigmas, and might not effectively achieve the city's objective of promoting traffic safety and improving community appearance. We therefore conclude that the ordinance cannot fairly and reasonably be construed in a manner that would preserve its constitutionality.

The United States Supreme Court decision was based on the specific terms of the San Diego ordinance. Section B, the crucial prohibitory language of the ordinance, bans all outdoor advertising display signs except for signs identifying the premises where the sign is located or advertising a product or service sold on those premises. The ordinance thus impartially bans commercial or noncommercial off-site signs, but while it permits an owner or lessee to erect a sign to advertise his business, it does not permit him to erect a sign to state his political or social views. Section F of the ordinance then provides 12 specific and narrow exceptions, of which the most important excepts political campaign signs maintained for no longer than 90 days. Many of the exceptions relate to noncommercial signs, but even taking into account all the exceptions the ordinance still appears to enact a substantial prohibition on noncommercial signs.

The plurality opinion of the United States Supreme Court (Justice White, for himself and Justices Stewart, Marshall and Powell), stated that considerations of community aesthetics and traffic safety justified San Diego's ban on off-site commercial billboards. The plurality stated, however, that the ordinance's ban on noncommercial billboards was facially unconstitutional.[3]

[3]Our opinion had upheld the San Diego ordinance on its face, but noted that the ordinance might be unconstitutional if applied to ban a noncommercial billboard when there was no reasonable alternative means of communication. (26 Cal.3d 848, 869, fn. 14.) Amicus the City of Alameda asserts that the United States Supreme Court misunderstood our footnote when it characterized it as imposing a standing requirement (see 453 U.S. 490, 504, fn. 11 [69 L.Ed.2d 800, 812]); Alameda argues that our footnote 14 supplies the limiting construction required to render the ordinance constitutional.

Our footnote 14 did not construe the ordinance, but noted only that it might be unconstitutional as applied to cases in which the advertiser can show he has no other reasonable means of communication. The Supreme Court plurality opinion suggests that the ordinance can only be saved by a facial construction which excludes noncom-

First, the plurality stated, by permitting on-site commercial billboards but prohibiting the on-site owner from displaying a noncommercial message, the ordinance unconstitutionally discriminates against noncommercial speech. "Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." (453 U.S. 490, 513 [69 L.Ed.2d 800, 818].)

Second, the plurality indicated that the 12 exceptions for noncommercial speech in section F of the ordinance were too narrow. "With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse. ... Because some noncommercial messages may be conveyed on billboards ..., San Diego must similarly allow billboards conveying other noncommercial messages ...." (453 U.S. at p. 515 [69 L.Ed.2d at p. 819].)[4]

In a footnote at the conclusion of the plurality opinion, the Supreme Court explained the task of this court following remand of the case: "Although the ordinance contains a severability clause, determining the meaning and application of that clause is properly the responsibility of the state courts.... *Since our judgment is based essentially on the inclusion of noncommercial speech within the prohibitions of the ordinance, the California courts may sustain the ordinance by limiting its reach to commercial speech, assuming the ordinance is susceptible to this treatment.*" (453 U.S. 490, 521-522, fn. 26 [69 L.Ed.2d 800, 823-824]; italics added.)[5]

---

mercial signs, and nothing in that opinion suggests the exclusion can be limited to cases in which no other reasonable means of communication exists. Thus regardless of whether the Supreme Court misunderstood footnote 14, the doctrine of unconstitutionality as applied set out in that footnote is insufficient to save the validity of the ordinance.

[4]Justice Brennan, joined by Justice Blackmun, concurred in the plurality's views concerning noncommercial speech, but argued that the ordinance's prohibition on commercial billboards was also unconstitutional. Justice Brennan noted the difficulty in distinguishing between commercial and noncommercial speech. Chief Justice Burger, Justice Stevens, and Justice Rhenquist each wrote dissenting opinions supporting the San Diego ordinance.

[5]Metromedia points to footnote 25 of the plurality opinion, which states in part that "[a]ppellants [the billboard companies] contend that the ordinance will effectively eliminate their businesses and that this violates the Due Process clause. We do not

■ In accord with this statement of the United States Supreme Court, we turn to the specific language of the ordinance to determine if it is susceptible of a limiting construction that will avoid unconstitutionality. The critical language is that of section B, which reads as follows: "Only those outdoor advertising display signs, hereinafter referred to as signs in this Division, which are either signs designating the name of the owner or occupant of the premises upon which such signs are placed, or identifying such premises; or signs advertising goods manufactured or produced or services rendered on the premises upon which such signs are placed shall be permitted. The following signs shall be prohibited:

"1. Any sign identifying a use, facility or service which is not located on the premises.

"2. Any sign identifying a product which is not produced, sold or manufactured on the premises.

"3. Any sign which advertises or otherwise directs attention to a product, service or activity, event, person, institution or business which may or may not be identified by a brand name and which occurs or is generally conducted, sold, manufactured, produced or offered elsewhere than on the premises where such sign is located."

The city suggests two methods of saving the validity of the ordinance. First, we could construe the word "signs" and the phrase "outdoor advertising display signs" in section B as limited to those bearing a commercial message. This construction would avoid any prohibition or discrimination against noncommercial speech, thus avoiding the objections presented by the Supreme Court plurality opinion. Alternatively, we could sever and delete the indirect prohibition of the first sentence of section B (which states that only certain signs are permitted), and delete a portion of the direct prohibition of the second sentence of that section. Specifically, we would have to modify part 3 of that sentence which now prohibits "[a]ny sign which advertises or otherwise directs

know, however, what kind of ordinance, if any, San Diego will seek to enforce in place of that *which we invalidate today.*" (Italics added.) (453 U.S. 490, 521, fn. 25 [69 L.Ed.2d 800, 823].) Metromedia *contends that the italicized language indicates that* the Supreme Court plurality considers the ordinance dead, and beyond saving by any limiting construction. But while the language of footnote 25 could be read as Metromedia claims, that reading is dispelled by the unequivocal statement in footnote 26 that "the California courts may sustain the ordinance by limiting its reach to commercial speech, assuming the ordinance is susceptible to this treatment." (453 U.S. at p. 522, fn. 26 [69 L.Ed.2d at p. 824].)

attention to a product, service or *activity, event, person, institution or business*" (italics added) by deleting the italicized words, thereby limiting the prohibition to signs which advertise a "product, service or business." Such statutory surgery would remove any prohibition on noncommercial speech, and bring the San Diego ordinance into approximate alignment with the ordinance upheld by the United States Supreme Court in *Suffolk Outdoor Advertising Co.* v. *Hulse* (1978) 439 U.S. 808 [58 L.Ed.2d 101, 99 S.Ct. 66].[6]

We first consider the question of interpreting the term "outdoor advertising display signs" to limit it to commercial signs. Judicial doctrine governing construction of a law to avoid unconstitutionality is well settled. If "the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution." (*County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206]; *People* v. *Davis* (1968) 68 Cal.2d 481, 483-484 [67 Cal.Rptr. 547, 439 P.2d 651]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669].) Consequently, "[i]f feasible within bounds set by their words and purposes, statutes should be construed to preserve their constitutionality." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 175 [167 Cal.Rptr. 854, 616 P.2d 836].)

---

[6]The Supreme Court plurality opinion in *Metromedia* discussed *Suffolk Outdoor Advertising Co.* v. *Hulse*, explaining that that case, like *Metromedia*, "involved a municipal ordinance that distinguished between offsite and onsite billboard advertising prohibiting the former and permitting the latter. We summarily dismissed as not presenting a substantial federal question an appeal from a judgment sustaining the ordinance, thereby rejecting the submission, repeated in this case, that prohibiting offsite commercial advertising violates the First Amendment. The definition of 'billboard,' however, was considerably narrower in *Suffolk* than it is here: 'A sign which directs attention to a business, commodity, service, entertainment, or attraction sold, offered or existing elsewhere than upon the same lot where such sign is displayed.' This definition did not sweep within its scope the broad range of noncommercial speech admittedly prohibited by the San Diego ordinance. Furthermore, the New York ordinance, unlike that in San Diego, contained a provision permitting the establishment of public information centers in which approved directional signs for businesses could be located. This Court has repeatedly stated that although summary dispositions are decisions on the merits, the decisions extend only to the precise issues presented and necessarily decided by those actions." (453 U.S. 490, 498-499 [69 L.Ed.2d 800, 809].) From this language we conclude that the Supreme Court would probably approve a San Diego ordinance whose prohibition paralleled the prohibition in the *Suffolk* ordinance, even though the San Diego ordinance did not provide for public information centers, and extended its prohibition over a much larger, more populous, and more urbanized region than the *Suffolk* ordinance.

There are limits, however, to the ability of a court to save a statute through judicial construction. As we explained in *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], "'[t]his court cannot . . . in the exercise of its power to interpret, rewrite the statute. If this court were to insert in the statute all or any of the . . . qualifying provisions [required to render it constitutional], it would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with the presumed legislative intent. That is a legislative and not a judicial function.'" (P. 282, quoting *Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 369 [5 P.2d 882]; see *Flood* v. *Riggs* (1978) 80 Cal.App.3d 138, 156-157 [145 Cal. Rptr. 573].)

The issue before us, therefore, is whether a construction of section B to avoid any prohibition upon noncommercial signs would constitute a fair and reasonable interpretation of the language of the ordinance.[7] We conclude that it is not a fair and reasonable interpretation, but would instead constitute a judicial amendment of the ordinance to conform it to constitutional doctrine unanticipated by its drafters.

Our primary task in construing any law is to ascertain the legislative intent. (See, e.g., *People* v. *Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274] and cases there cited.) In the present case, the city's intent, as we noted in our prior opinion, was "the prohibition of commercial billboards" or, more accurately stated, the prohibition of "permanent structures used predominantly for commercial advertising." (*Metromedia, Inc.* v. *City of San Diego, supra,* 26 Cal.3d 848, 856, fn. 2.) It does not appear, however, that the city intended to limit its ban to billboards which carried commercial messages. To the contrary, the city's concern was not with the message but with the structure. The purpose of the ordinance was to eliminate signs which distracted pedestrians and motorists and which blighted the aesthetic character of the city (see 26 Cal.3d at p. 858); the commercial or noncommercial character of the billboard's message is largely irrelevant to these goals. The whole tenor of the ordinance as written, as well as the extensive litigation that ensued, shows that although billboards with commercial messages represent the greater part of the problem giving rise to the enactment, the city did not limit its reach to such billboards. Instead, its ordinance sought to prohibit all structures except on-site advertising displays.

---

[7]It is clear that none of the exceptions in section F of the ordinance can be construed to exempt all noncommercial signs.

This court, concerned by the absence of any definition of terms in the ordinance, itself attempted to define the scope of the ordinance's prohibition. In accord with our view of the legislative purpose, we adopted the definition of "outdoor advertising display" in Revenue and Taxation Code section 18090.2: "A rigidly assembled sign, display, or device permanently affixed to the ground or permanently attached to a building or other inherently permanent structure constituting, or used for the display of, a commercial or other advertisement to the public." (26 Cal.3d at p. 856, fn. 2.)[8] That definition narrowed substantially the scope of the ordinance, but by referring to the characteristics of the structure, not the message it bears, included noncommercial signs within its scope.

Established rules of statutory construction, employed by the courts as guides to the ascertainment of legislative intent (see *People* v. *Caudillo, supra,* 21 Cal.3d 562, 576), further support our conclusion that the ordinance cannot reasonably be construed to avoid banning noncommercial signs.

First, ordinances are to be interpreted "according to the usual, ordinary import of the language employed in framing them." (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 43 [127 Cal.Rptr. 122, 544 P.2d 1322].) Although the term "advertising" may imply a commercial message, it is not, in ordinary usage, limited to such message. "Advertising" is simply "the action of calling something . . . to the attention of the public." (Webster's New Internat. Dict. (3d ed. 1961) p. 31.) We speak of "political advertising," and even of "personal advertising." Thus, in common usage a billboard bearing a political or even a personal message would be considered an "advertising display sign."

Second, the ordinance itself speaks as if the prohibition of section B is not limited to commercial billboards, and uses the word "signs" to refer to structures bearing noncommercial messages. In section F, for example, it exempts from regulation "[t]emporary political campaign signs . . . which are erected or maintained for no longer than 90 days and which are removed within 10 days after the election to which they pertain." This language clearly implies both that political signs are not exempt from the ordinance merely by virtue of their noncommercial

---

[8]We note that San Diego adopted this definition of "outdoor advertising display" in its interim ordinance. (See San Diego Ord. No. 15551 (New Series), § 101.0762.1.)

character, and that political signs maintained for longer than 90 days or which do not pertain to a particular election are prohibited by the ordinance.[9] "It is a familiar principle of construction that a word repeatedly used in a statute will be presumed to bear the same meaning throughout the statute . . . ." (*Pitte* v. *Shipley* (1873) 46 Cal. 154, 160; see *Corey* v. *Knight* (1957) 150 Cal.App.2d 671, 680 [310 P.2d 673].)

For the foregoing reasons, we think it clear that the San Diego City Council, in enacting the ordinance in question, intended to include noncommercial billboards. That intention cannot be given effect, for under the decision of the United States Supreme Court an ordinance that prohibits noncommercial signs, but permits on-site commercial signs, is facially invalid. The city argues that under these circumstances, the legislative purpose will be better served by construing the ordinance to limit it to commercial off-site signs than by nullifying it altogether.

It is not entirely clear whether a court has the power to construe a law contrary to the legislative intent at the time it was enacted, even if that construction is necessary to salvage what can be saved of the legislative purpose.[10] Decisions relating to severability of partially unconstitutional legislation, however, envision a larger judicial role; even if the statute following severability is not what the enacting body originally intended, the courts can sustain the statute if severance is mechanically feasible and the legislative body would have preferred such an outcome to total invalidation. The city's argument based on the purpose of ordinance 10795 is therefore best considered in connection with its claim that the ordinance can be saved by severance and deletion of all language imposing a ban on noncommercial signs.

---

[9]Other exemptions in section F also indicate that the ordinance applies to noncommercial signs. The section states that "[t]he following types of signs shall be exempt from the provisions of these regulations:

" . . . . . . . . . . .

"4. Commemorative plaques of recognized historical societies and organizations.

"5. Religious symbols, legal holiday decorations and identification emblems of religious orders or historical societies.

" . . . . . . . . . . . . .

"8. Public service signs limited to the depiction of time, temperature or news. . . ."

[10]We have found only one case which is even arguably on point. In *People* v. *Perry* (1889) 79 Cal. 105 [21 P. 423], a statute established a five-year term for members of the San Francisco Board of Health, contrary to a constitutional provision limiting such terms to four years. The official argued that a construction of the statute to provide a four-year term would better serve the legislative purpose than a holding that he served at the pleasure of the appointing authorities. The court rejected this argument, stating that "we know of no precedent for holding that a clause of a statute, which as enacted

The ordinance in question contains a severability clause. "'Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable. [Citation.]' . . . Such a clause plus the ability to mechanically sever the invalid part while normally allowing severability, does not conclusively dictate it. The final determination depends on whether 'the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute' (*In re Bell* [1942] 19 Cal.2d 488, 498 [122 P.2d 22]) or 'constitutes a completely operative expression of the legislative intent . . . [and] are [not] so connected with the rest of the statute as to be inseparable.' (*In re Portnoy* [1942] 21 Cal.2d [237] at p. 242 [131 P.2d 1].)" (*Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315, 331 [118 Cal.Rptr. 637, 530 P.2d 605].)

The severance required to save ordinance 10795, although drastic surgery, is mechanically possible. The resulting ordinance, however, would take a strange form. The provisions for amortization and removal of billboards in sections C, D, and E would be difficult to apply, since the city's right to remove a billboard would depend on the message it presents, and billboard copy changes at frequent intervals. The exceptions in section F would also seem out of place, since many would be wholly or partially unnecessary in an ordinance limited to commercial speech.

The principal objection to severance, however, is that it is doubtful whether the purpose of the original ordinance is served by a truncated version limited to commercial signs. Since the effect of such an ordinance would depend on the extent to which persons were willing to purchase billboard space for noncommercial advertising, it would offer no assurance that a substantial number of billboards, or any particular billboard, would be removed, or that the erection of new billboards would be inhibited. Such an ordinance, moreover, would require the city to police the content of advertising messages, and would compel it to distinguish commercial from noncommercial speech—an extremely difficult task, and one which presents serious constitutional problems. (See *Metromedia, Inc.* v. *San Diego, supra*, 453 U.S. 490, 536-540 [69 L. Ed.2d 800, 832-835], [conc. opn. of Brennan, J.].)

---

is unconstitutional, may be changed in meaning in order to give it some operation, when admittedly it cannot operate as the Legislature intended." (P. 115.)

On the other hand, an alternative ordinance which regulated the location, size, and appearance of billboards but stopped short of a total ban could severely limit the total number of billboards within the city, eliminate those signs which posed the greatest traffic hazard or aesthetic blight, and prevent the erection of new signs in undesirable locations. By qualifying as a "time, place, or manner" (*Cox* v. *New Hampshire* (1941) 312 U.S. 569, 575 [85 L.Ed. 1049, 1053, 61 S.Ct. 762, 133 A.L.R. 1396]) regulation of speech, such an alternative ordinance might avoid the problem of distinguishing commercial from noncommercial speech. In short, given the invalidity of a ban on all off-site billboards, the legislative purpose may be better served by an ordinance which bans most off-site billboards than by one which draws a distinction based on the content of the of the billboard's message.

In summary, the City of San Diego intended a comprehensive ban on off-site advertising signs, subject only to the exceptions set in section F of the ordinance. Its ordinance, enacted to achieve that goal, has been held facially unconstitutional by the United States Supreme Court. Although that court said that the ordinance could be saved by severance or a limiting construction, confining its prohibition to commercial signs, such a prohibition would be inconsistent with the language and original intent of the ordinance. It would, moreover, leave the city with an ordinance different than it intended, one less effective in achieving the city's goals, and one which would invite constitutional difficulties in distinguishing between commercial and noncommercial signs. We therefore reject the proposed construction or severance and hold San Diego Ordinance No. 10795 facially invalid.

The judgment of the superior court enjoining enforcement of San Diego Ordinance No. 10795 (New Series) is affirmed.

Bird, C. J., Mosk, J., Richardson, J., and Newman, J., concurred.

KAUS, J.—I respectfully dissent.

As the majority notes, in view of the United States Supreme Court decision in this case (*Metromedia, Inc.* v. *San Diego* (1981) 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882]), the sole question before us is whether the San Diego billboard ordinance at issue should be invalidated in its entirety or should be construed—in order to preserve its constitutionality—as prohibiting only commercial off-site billboards. In choosing total invalidation, the majority airily dismisses in footnote 2

the most important factor in the case: in July 1981—after, and in direct response to, the United States Supreme Court decision—the City of San Diego enacted an ordinance making clear its intent that the billboard ordinance *be preserved insofar as constitutionally permissible,* even if that ordinance's ban on noncommercial as well as commercial off-site billboards cannot stand. It seems to me that proper deference to the city's legislative prerogative in choosing between alternative, constitutionally permissible billboard regulations requires that we give effect to this explicit, legislatively expressed choice.

The error in the majority's result is perhaps traceable to its statement that "[i]t is not entirely clear whether the court has the power to construe a law contrary to the legislative intent at the time it was enacted, even if that construction is necessary to salvage what can be saved of the legislative purpose." (*Ante,* p. 189.) In an accompanying footnote, the majority explains that it has "found only one case which is even arguably on point," an *1889* decision—*People* v. *Perry* (1889) 79 Cal. 105 [21 P. 423]—in which the court stated that "we know of no precedent for holding that a clause of a statute, which as enacted is unconstitutional, may be changed in meaning in order to give it some operation, when admittedly it cannot operate as the Legislature intended." (79 Cal. at p. 115.)

Whether or not there was such precedent at the time of the *Perry* decision, today there are literally dozens of cases that make it quite clear that courts are fully authorized to undertake precisely this kind of constitutionally compelled editing and interpreting in order to uphold a legislative scheme insofar as is constitutionally permissible.

A few examples should illustrate the point. In *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636], we addressed a constitutional challenge to Penal Code section 647, subdivision (a), which imposed penal sanctions against anyone who "solicits . . . or . . . engages in lewd or dissolute conduct in any public place . . . ." After a comprehensive analysis of the statutory language, legislative history and judicial application of the provision, we concluded that the statute as written was unconstitutionally vague, but then—in order to save its constitutionality—we undertook a substantial revision of the statutory language, "arriv[ing] at the following construction of section 647, subdivision (a): The terms 'lewd' and 'dissolute' in this section are synonymous, and refer to conduct which involves the touching of the genitals, buttocks or female breast for the purpose of sexual arousal,

gratification, annoyance or offense, if the actor knows or should know of the presence of persons who may be offended by his conduct. The statute prohibits such conduct only if it occurs in any public place or in any place open to the public or exposed to public view; it further prohibits the solicitation of such conduct to be performed in any public place or in any place open to the public or exposed to public view." (25 Cal.3d at pp. 256-257.) In formulating this interpretation, we did not suggest that our detailed construction conformed precisely to the statute that the original legislators intended to enact, but instead we acted on our judgment that—given the relevant constitutional constraints—the Legislature would have preferred the more specific and narrowly drawn construction than no statute whatsoever.

*In re Kay* (1970) 1 Cal.3d 930 [83 Cal.Rptr. 686, 464 P.2d 142] similarly demonstrates the propriety of this type of judicial construction. The provision at issue in *Kay* was Penal Code section 403, which provided that "[e]very person who, without authority of law, wilfully disturbs or breaks up any assembly or meeting . . . is guilty of a misdemeanor." In that case, the statute had been invoked against a group of vocal demonstrators at an outdoor political rally, and we pointed out that under the First Amendment if section 403 "were literally applied with the breadth of coverage that its terms could encompass, the statute would be constitutionally overbroad and could not stand." (1 Cal.3d at p. 941.) Rather than invalidate the statute, however, "[t]o effectuate section 403 within constitutional limits we interpret[ed] it to require the following showing to establish its transgression: that the defendant substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known." (*Id.*, at p. 943.) As in *Pryor*, we did not suggest that this construction precisely coincided with the original legislative intent, but nonetheless we adopted this interpretation because it was more in keeping with the legislative will than striking down the statute completely.

A final example makes the point in perhaps the clearest terms possible. In *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], we passed on a constitutional challenge to Welfare and Institutions Code section 558, which provided in part that if a juvenile defendant's application for rehearing from a referee's decision "is not granted within 20 days following the date of its receipt, it shall be deemed denied." In a unanimous decision by former Chief Justice

Wright, the court concluded that by giving binding effect to a referee's decision without requiring some action by the trial court, this portion of the statute violated the constitutional restriction on a referee's powers. We then turned to the question of remedy, noting that the proper approach was to seek "a construction [of section 558] that will eliminate this invalid application and yet preserve the parts and applications of the statute which do not violate the constitutional provisions *and which the Legislature would have intended to put into effect if it had foreseen the constitutional restriction.*" (Italics added; 14 Cal.3d at p. 736.) After considering the possibility of simply eliminating the offending sentences altogether, we rejected that solution, explaining: "We believe that the legislative intent will be more fully effectuated within the constitutional restraint by altering the operative effect of these sentences rather than striking them altogether.... [W]e conclude that we best harmonize the statutory purpose with the constitutional command *by requiring that applications which would be 'deemed denied' under the section's literal wording be instead granted as of right ....*" (Italics added; *id.*, at p. 737.) It is obvious, of course, that this interpretation did not conform to the legislative intent at the time the measure was enacted, but we adopted that reading because we felt that it was the interpretation "which the Legislature would have intended to put into effect if it had foreseen the constitutional restriction." (*Id.*, at p. 736.)

Ordinarily, when a court concludes that a legislative enactment may not be constitutionally applied in the form that it is enacted, it will have no direct evidence as to what the legislative body would have intended "if it had foreseen the constitutional restriction;" in those circumstances—as in *Pryor, Kay* and *Edgar M.*—a court has no alternative but to use its best judgment in assessing the probable legislative intent. In the present case, however, we have no need to guess as to the legislative body's probable intent. As the majority itself recognizes (*ante,* p. 182, fn. 2), in July 1981—just a few weeks after, and in direct response to, the United States Supreme Court decision in this case—the City of San Diego enacted an emergency interim billboard ordinance which, inter alia, specifically provided that "[i]n the event that further court proceedings in Metromedia et al. v. City of San Diego et al., ... result in Ordinance No. 10795 (N.S.) [the ordinance at issue here] being held valid and constitutional in whole *or in part then the provisions of Ordinance No. 10795 shall prevail* and remain applicable unless and until the City Council expressly repeals Ordinance No. 10795 (N.S.)." (Italics added.) Inasmuch as the United States Supreme Court decision which was before the San Diego City Council when it enacted this new

ordinance made it clear that the earlier ordinance could be sustained only "by limiting its reach to commercial speech" (435 U.S. at pp. 521-522, fn. 26 [69 L.Ed.2d at p. 824]), the quoted portion of the July 1981 ordinance can only mean that the city prefers to preserve its old ordinance even in truncated form, rather than rely solely on its newly enacted interim time, place and manner regulations.

In declining to adopt the limiting construction suggested by the United States Supreme Court to preserve the ordinance's constitutionality, the majority surmises that a total ban of all off-site commercial billboards may not achieve the city's ultimate purpose of removal of billboard structures; it reasons that "[s]ince the effect of such an ordinance would depend on the extent to which persons were willing to purchase billboard space for noncommercial advertising, it would offer no assurance that a substantial number of billboards, or any particular billboard, would be removed, or that the erection of new billboards would be inhibited." (*Ante*, p. 190.) The city may well have concluded, however, that in light of its evaluation of the economics of the situation, a total ban on off-site commercial billboards will result in fewer billboard structures than a time, place or manner regulation; if off-site billboard space cannot generate income from commercial advertising, the owners of the billboard structures may well decide that it is not profitable to maintain them for the relatively few, noncommercial billboard messages. In any event, even if the majority is correct in its assessment that a time, place and manner regulation applicable to *all* off-site billboards would be more effective than a citywide ban applicable only to *commercial* off-site billboards, the choice between alternative, constitutionally permissible regulatory schemes is, of course, a policy matter for the city, not this court.[1]

---

[1]Furthermore, the majority appears to overlook the fact that even if the city maintains a total ban on off-site commercial billboards, there is no reason why it could not *also* enact reasonable time, place and manner regulations applicable to off-site noncommercial billboards.

The majority additionally indicates that an interpretation which limits the ordinance's off-site ban to commercial billboards would make the amortization and removal provisions of the ordinance difficult to apply. (*Ante*, p. 190.) Although the question of the application of these provisions to particular billboard structures is premature, I do not see any insurmountable obstacle. If the ordinance is construed to make off-site commercial use impermissible, the amortization provision could be applied by permitting a billboard owner to use a billboard structure for otherwise impermissible commercial messages for the length of the appropriate amortization period. Once the owner has exhausted that period, a particular structure could only be used for noncommercial purposes; if it is not so used, removal could be ordered.

Since the city has made it clear that it prefers to retain this ordinance to the extent constitutionally permissible, I believe that we should construe the ordinance's prohibition on off-site billboards as applicable only to commercial billboards. As so interpreted, the ordinance is constitutional and should be upheld.

Reynoso, J., concurred.