[No. A084574. First Dist., Div. One. June 11, 1999.]

ANDREW BARLOW et al., Plaintiffs and Appellants, v.
GRAY DAVIS, as Governor, etc., et al., Defendants and Respondents.

COUNSEL

Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Oren M. Sellstrom; Equal Rights Advocates, Beth Parker; The Employment Law Center, William C. McNeill, Julian Gross; American Civil Liberties Union Foundation of Northern California, Edward Chen; American Civil Liberties Union Foundation of Southern California, Mark D. Rosenbaum, Daniel Tokaji; and Karl Manheim for Plaintiffs and Appellants.

Heller, Ehrman, While & McAuliffe, Robert E. Borton and Hilary E. Ware for Society of Professional Journalists as Amicus Curiae on behalf of Plaintiffs and Appellants.

Morrison & Foerster, Matthew I. Kreeger and Martha P. Siegel for Mary Frances Berry, Yvonne Y. Lee, Cruz Reynoso and Leon A. Higginbotham, Commissioners of the United States Commission on Civil Rights as Amici Curiae on behalf of Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Linda A. Cabatic, Assistant Attorney General, Paul H. Dobson and Daniel G. Stone, Deputy Attorneys General, for Defendants and Respondents.

OPINION

SWAGER, J.—In this action for writ of mandate and injunctive and declaratory relief, the trial court determined that section 10115.5 of the Public Contract Code[1] must be declared void as an unseverable part of a statutory scheme previously found constitutionally invalid. We agree and affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Section 10115.5 was enacted in 1988 as part of division 2, part 2, chapter 1, article 1.5 (article 1.5) of the Public Contract Code (§ 10115 et seq.). The Legislature in enacting this article declared that one of its purposes was to "improve the economically disadvantaged position of minority, women, and disabled veteran business enterprises," (§ 10115, subd. (a)(4)) in the "procurement of construction, commodities, and professional services contracts." (§ 10115, subd. (b)(2); Stats. 1988, ch. 61, § 3, pp. 327-329.) To "ensure that a fair proportion of the total number of contracts or subcontracts for commodities, supplies, technology, property, and services are awarded to minority, women, and disabled veteran business enterprises," (§ 10115, subd. (a)(1)), statewide numerical "participation goals" for those designated

---

[1]All further statutory references are to the Public Contract Code unless otherwise indicated.

groups are specified for contracts awarded by state agencies or departments. (§§ 10115, subd. (c), 10115.11, subd. (a), 10115.13.)[2] The participation goals "apply to the overall dollar amount expended each year by the awarding department . . . ." (§ 10115, subd. (c).)

According to the statutory scheme, in awarding contracts to the lowest responsible bidder, state departments must: consider the efforts of a bidder to meet minority, women, and disabled business enterprise goals set forth in the article; and, award contracts to "the lowest responsible bidder meeting or making good faith efforts to meet these goals." (§ 10115.2, subd. (a).) A state department cannot award a contract to a bidder who neither meets nor makes good faith efforts to meet the percentage participation goals. To satisfy the requirement of good faith efforts, the bidder must submit documentary evidence of actions taken to identify, focus advertising on, solicit and consider bids from subcontracting firms in the designated business enterprise groups. (§ 10115.2, subd. (b).) When specifying the general conditions under which bids are taken in connection with the award of any contract, awarding departments are obligated to advise persons submitting bids to identify "each subcontractor certified as a minority, women, or disabled veteran business enterprise who will perform work or labor or render service to the prime contractor in connection with the performance of the contract and who will be used by the prime contractor to fulfill minority, women, and disabled veteran business enterprise participation goals." (§ 10115.12.) Awarding departments are also compelled to establish a method of monitoring adherence to the stated participation goals, along with "rules and regulations for the purpose of implementing this article." (§ 10115.3.)[3]

The provision specifically at issue here, section 10115.5, provides in subdivision (a) that "on January 1 of each year, each awarding department shall report to the Governor and the Legislature on the level of participation by minority, women, and disabled veteran business enterprises in contracts as identified in this article for the fiscal year beginning July 1 and ending June 30." The report must "contain the levels of participation by minority, women, and disabled veteran business enterprises" for enumerated categories of contracts. (*Ibid.*) If established participation goals are not met, the

---

[2] In the statutory scheme, " 'Goal' means a numerically expressed objective that awarding departments and contractors are required to make efforts to achieve." (§ 10115.1, subd. (g).)

[3] Although, "Notwithstanding any other provision of this article, the failure of an awarding department to meet the goals established under this article shall not affect the validity or enforceability of any contract or any bonds, notes, or other obligations issued by the awarding department to provide for the payment of any contract subject to this article." (§ 10115.6.)

awarding department "shall report the reasons for its inability to achieve the standards and identify remedial steps it shall take." (§ 10115.5 subd. (b).)[4]

The participation goals and good faith requirements of article 1.5 were found violative of equal protection principles by the United States Court of Appeals for the Ninth Circuit in *Monterey Mechanical Co.* v. *Wilson* (9th Cir. 1997) 125 F.3d 702, 714-715.[5] The court concluded that the mandates of the act classify "contractors differently according to their ethnicity and sex, with regard to the 'good faith' requirement." (*Id.*, at p. 711.) "The statutory classification also imposes higher compliance expenses on some firms than others, according to ethnicity and sex." (*Id.*, at p. 712.) Thus, the court determined, "[t]he statute benefits bidders and subcontractors who fit the classification 'minority business enterprise' and 'women business enterprise.' [Citation.]" (*Id.*, at pp. 712-713.) The "racial classification" thereby imposed was further found not to survive the "strict scrutiny" test of justification, which demands proof of "a narrowly tailored remedy for past discrimination, active or passive, by the governmental entity making the classification." (*Id.*, at p. 713.) The *Monterey Mechanical* decision did not specifically consider the reporting provisions of section 10115.5.

In response to the opinion in *Monterey Mechanical*, Pete Wilson, acting in his official capacity as Governor of California, issued Executive Order No. W-172-98, on March 10, 1998, which directed all state agencies and departments to "cease any enforcement of the minority and women business enterprise participation goals and the good faith effort requirements related thereto under Public Contract Code § 10115 et seq. with respect to any state contracts or amendments thereto awarded or entered, or proposed to be awarded or entered, on or after March 10, 1998."[6] The same order further stated: "All actions, programs, and regulations which seek to monitor,

---

[4]In full, section 10115.5 reads: "(a) Notwithstanding Section 7550.5 of the Government Code, on January 1 of each year, each awarding department shall report to the Governor and the Legislature on the level of participation by minority, women, and disabled veteran business enterprises in contracts as identified in this article for the fiscal year beginning July 1 and ending June 30. In addition, the report shall contain the levels of participation by minority, women, and disabled veteran business enterprises for the following categories of contracts: [¶] (1) Construction. [¶] (2) Purchases of materials, supplies, and equipment. [¶] (3) Professional services. [¶] (4) All contracts for a dollar amount of less than twenty-five thousand dollars ($25,000). [¶] (b) If the established goals are not being met, the awarding department shall report the reasons for its inability to achieve the standards and identify remedial steps it shall take."

[5]Hereafter referred to as *Monterey Mechanical*. Rehearing of the case was denied and the decision became final on March 9, 1998. (See *Monterey Mechanical Co.* v. *Wilson* (9th Cir. 1998) 138 F.3d 1270.)

[6]The provisions of article 1.5 as related to disabled veteran business enterprises were neither at issue in *Monterey Mechanical* nor mentioned in Executive Order No. W-172-98, and are not at issue here.

promote, or comply with the minority or women business enterprise goals or the good faith efforts related thereto under Public Contract Code § 10115 et seq. shall no longer be administered and where appropriate, be repealed." Pursuant to Executive Order No. W-172-98, the respondent state departments suspended efforts to monitor or report upon the level of participation by minority and women business enterprises as required by section 10115.5.

Appellants thereafter brought the present action for writ of mandate and injunctive and declaratory relief, challenging the validity of Executive Order No. W-172-98 and the failure of respondents to comply with article III, section 3.5 of the California Constitution, and sections 2056 and 10115.5. Following denial of appellants' motion for a preliminary injunction, the parties stipulated that the court's decision on the petition for writ of mandate would "apply to all remaining relief requested" by appellants. In its subsequent statement of decision, the trial court denied the petition for writ of mandate, based upon the conclusion "that the Governor and the other respondents have no duty to enforce the provisions of section 10115.5 as it applies to MBEs and WBEs because the reporting that it directs is dependent upon, and inextricably intertwined with, the enforcement of article 1.5's statutory scheme which has been found by the Ninth Circuit Court of Appeals in *Monterey Mechanical Co.* v. *Wilson* to be unconstitutional."[7] In accordance with the stipulation, judgment was entered in favor of respondents as to all causes of action, and this appeal followed.

## DISCUSSION

Appellants argue that by failing to comply with the requirement "to track information on MBE and WBE participation rates," respondents are in violation of section 10115.5, along with article III, section 3.5, subdivision (a) of the California Constitution which provides that an administrative agency has no power "[t]o declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional." (See also *Regents of University of California* v. *Superior Court* (1990) 225 Cal.App.3d 972, 976 [276 Cal.Rptr. 197].)  █  Appellants claim that the opinion in *Monterey Mechanical* did not declare section 10115.5 invalid, and its provisions are severable from the remainder of article 1.5 found unconstitutional. Therefore, appellants submit, respondents must continue to adhere to the statutory "information-gathering mandate" of section 10115.5, "that is fully functional and independent of the invalidated affirmative action program."

---

[7]The terms MBE's and WBE's have been used by the parties to refer to "minority business enterprises" and "women business enterprises," respectively.

To support their argument that section 10115.5 is severable from the invalidated portions of article 1.5, appellants rely upon an explicit severability clause found in section 10115.8, which provides: "If any provision of this article or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the article which can be given effect without the invalid provision or application, and to this end the provisions of this article are severable."[8] Appellants maintain that section 10115.8 "creates a strong presumption in favor of severability," which, when considered along with the fact that the "information-gathering provision can also easily be separated grammatically from the invalidated goals program," dictates that we find section 10115.5 severable.

A severability clause such as section 10115.8, " '[a]lthough not conclusive, . . . normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable. . . . Such a clause plus the ability to mechanically sever the invalid part while normally allowing severability, does not conclusively dictate it. The final determination depends on whether the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute . . . .' [Citations.] [¶] The cases prescribe three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable." (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 821 [258 Cal.Rptr. 161, 771 P.2d 1247]; *California Gillnetters Assn.* v. *Department of Fish & Game* (1995) 39 Cal.App.4th 1145, 1158 [46 Cal.Rptr.2d 338].)

We agree with appellants that in addition to the severability clause, section 10115.5 is mechanically and grammatically severable from the provisions of article 1.5 declared unconstitutional in *Monterey Mechanical*. "An enactment passes the grammatical test ' "where the language of the statute is mechanically severable, that is, where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words. [Citations.]" ' (*Santa Barbara Sch. Dist.* v. *Superior Court* [(1975)] 13

---

[8]Section 10115.8 was enacted in 1989 (Stats. 1989, ch. 1229, §§ 6-9, pp. 4809-4811) as an amendment to article 1.5, to clarify the law following the United States Supreme Court's decision in *Richmond* v. *J. A. Croson Co.* (1989) 488 U.S. 469 [109 S.Ct. 706, 102 L.Ed.2d 854], which indicated that minority preference schemes implicate but will not invariably violate equal protection principles. Other amendments enacted with section 10115.8 specified the circumstances in which a bidder would be deemed to have made good faith efforts to achieve minority and women business participation goals (§ 10115.2, subd. (b)), and provided that nothing in the law shall be construed to authorize an awarding department or contractor to discriminate on the basis of race, color, sex, ethnic origin or ancestry (§ 10115.7, subds. (a), (b)).

Cal.3d [315,] 330 [118 Cal.Rptr. 637, 530 P.2d 605].)" (*People* v. *Library One, Inc.* (1991) 229 Cal.App.3d 973, 988 [280 Cal.Rptr. 400], italics omitted.) Section 10115.5 is not a subsection of the invalidated statutes; it constitutes an entirely separate statute grammatically and mechanically from the invalid substantive provisions relating to bidding and awarding contracts, participation goals for MBE's and WBE's, and "good faith efforts." The *wording* of section 10115.5 is not affected by removal of the invalidated statutes. (See *Calfarm Ins. Co.* v. *Deukmejian, supra,* 48 Cal.3d at p. 822; *Maribel M.* v. *Superior Court* (1998) 61 Cal.App.4th 1469, 1477 [72 Cal.Rptr.2d 536].) Thus, the "grammatical" component of the test for severance is met by the severability clause considered in conjunction with the separate and discrete provisions of section 10115.5. (*People* v. *Library One, Inc., supra,* at p. 989.)

We turn to an examination of the remaining criteria for severability. "A severability clause and the ability to sever mechanically the unconstitutional portions of a statute from the constitutional portions will ordinarily allow severance, but that process is not compelled unless the remainder of the statute is complete in itself and would have been adopted without the invalidated portion. (*Sonoma County Organization of Public Employees* v. *County of Sonoma* [(1979)] 23 Cal.3d [296,] 320 [152 Cal.Rptr. 903, 591 P.2d 1], citing *Santa Barbara Sch. Dist.* v. *Superior Court* [(1975)] 13 Cal.3d 315, 330-331 [118 Cal.Rptr. 637, 530 P.2d 605].) The remaining portions must constitute an independent operative expression of legislative intent, unaided by the invalidated provisions. They cannot be rendered vague by the absence of the invalidated provisions or be inextricably connected to them by policy considerations. They must be capable of separate enforcement. (*People's Advocate, Inc.* v. *Superior Court* [(1986)] 181 Cal.App.3d [316,] 332 [226 Cal.Rptr. 640].) The three criteria for severability—grammatical, functional, and volitional independence—must be met. (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 821 [258 Cal.Rptr. 161, 771 P.2d 1247].)" (*City of Woodlake* v. *Logan* (1991) 230 Cal.App.3d 1058, 1070 [282 Cal.Rptr. 27]; see also *Gerken* v. *Fair Political Practices Com.* (1993) 6 Cal.4th 707, 714 [25 Cal.Rptr.2d 449, 863 P.2d 694].) "[S]everability of an unconstitutional portion of a statute requires the mechanical qualification of verbal separability, and, ultimately a judgment whether the enacting body would have enacted the remaining portions without the invalid one." (*Long Beach Lesbian & Gay Pride, Inc.* v. *City of Long Beach* (1993) 14 Cal.App.4th 312, 327 [17 Cal.Rptr.2d 861].)

The critical "functional" test of severance demands that the sections are "capable of independent application. In order to pass this test '[t]he remaining provisions must stand on their own, unaided by the invalid

provisions nor rendered vague by their absence nor inextricably connected to them by policy considerations.' [Citation.]" (*People* v. *Library One, Inc., supra,* 229 Cal.App.3d at p. 989.) "[T]he sections to be severed, though grammatically distinct, must be capable of independent application." (*People's Advocate, Inc.* v. *Superior Court* (1986) 181 Cal.App.3d 316, 331 [226 Cal.Rptr. 640].) ▪ The severability clause of section 10115.8 essentially enumerates the same functional test by providing that the invalidity of part of the article "shall not affect other provisions or applications of the article *which can be given effect without the invalid provision or application* . . . ." (Italics added.) " '[S]uch a clause does not require that we salvage provisions which even though valid are not intended to be independently operative.' " (*People's Advocate, Inc.* v. *Superior Court, supra,* at p. 332, quoting from *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 152-153 [130 Cal.Rptr. 465, 550 P.2d 1001].) "The remainder must ' "constitute[] a completely operative expression of the legislative intent . . . ." ' (*Santa Barbara, supra,* 13 Cal.3d at p. 331.) The part to be severed must not be part of a partially invalid but unitary whole." (*People's Advocate, Inc.* v. *Superior Court, supra,* at p. 332.)

Far from being functionally autonomous, the reporting requirements of section 10115.5 find efficacy only when correlated with the invalidated substantive provisions of article 1.5. Section 10115.5 is not a generic reporting law. The statute specifies in subdivision (a) that annual reports must be made "on the level of participation by minority, women, and disabled veteran business enterprises in contracts *as identified in this article* . . . ." (Italics added.) If participation goals are not met, subdivision (b) directs that the awarding department must articulate in the reports the reasons for "its inability to achieve the standards" expressed in the invalidated statutes, and "identify remedial steps." The awarding departments must further implement procedures, rules and regulations for the express purpose of monitoring and implementing "the goals specified in this article." (§ 10115.3.) Thus, section 10115.5, when evaluated in conjunction with the act of which it is a part, operates in a specific and limited context: it monitors the execution and administration of those programs and participation goals enunciated in the remainder of the statutory scheme. No other reporting obligation is imposed by section 10115.5. With the abrogation of the numerical participation goals for minority and women business enterprises, the reports cannot serve the function intended by the statute. Therefore, section 10115.5 is not functionally severable from the unconstitutional sections of article 1.5. "[W]hen the main purpose of a statute is defeated by the unconstitutionality of part of the act, the whole act is invalid. (See 2 Sutherland, Statutory Construction (5th ed. 1993) § 44.07, p. 518.)" (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 261 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

While appellants and the amici curiae parties observe that collection of data on participation of minority and women business enterprises in contracts awarded by state agencies is, in the abstract, a valuable activity and laudable goal, in determining severance we are examining the intended function of a particular statutory scheme, not more conceptual policy matters. So too, as appellants observe, awarding departments may continue to furnish reports even without the participation goals and programs found unconstitutional in *Monterey Mechanical.* But according to severance criteria, we must find a " ' "a completely operative expression of legislative intent" ' " in the portions of the legislation not specifically invalidated. (*Gerken* v. *Fair Political Practices Com., supra,* 6 Cal.4th at p. 714, italics omitted.) Following the decision in *Monterey Mechanical,* the objective of section 10115.5 to report on the participation goals and programs of article 1.5 cannot be achieved. Any further data on numerical levels of participation by minority and women business enterprises no longer reflects compliance with the law. Finally, the statute is no longer capable of separate effective enforcement. Since the programs to be reported on are no longer in existence, the reporting provisions have no independent relevance, and the failure to report is of no consequence to the essential purpose of exacting substantive compliance with the law.

Although the Legislature may entertain an intent to impose requirements upon state agencies or departments to report more generally on ethnic and gender business participation in public contracting, it has not done so in section 10115.5. We cannot rewrite or redefine the provisions of section 10115.5 to be free of the intrinsic association with the remainder of the act. (*California Beer & Wine Wholesalers Assn.* v. *Department of Alcoholic Beverage Control* (1988) 201 Cal.App.3d 100, 110-111 [247 Cal.Rptr. 60].) By expressly defining the reporting requirements of section 10115.5 with reference to the level of participation by designated groups "as identified in this article," (§ 10115.5, subd. (a)), the Legislature inextricably connected the policies and goals of the statute to the invalid provisions of the law. (*People* v. *Library One, Inc., supra,* 229 Cal.App.3d at p. 989.) We find section 10115.5 to be without independent basis or operation. Nor, as we view the statute, would the Legislature have enacted section 10115.5 in its present form without the substantive provisions to which it relates. We therefore conclude that the reporting provisions of section 10115.5, insofar as they concern minority and women business enterprises, are neither functionally nor volitionally severable from the rest of article 1.5, and along with it must be declared void. (*People* v. *Library One, Inc., supra,* at p. 989.)

Accordingly, the judgment is affirmed.

Strankman, P. J., and Marchiano, J., concurred.

On July 12, 1999, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied September 15, 1999.