N.R. SMITH, Circuit Judge,
concurring in part and dissenting in part:
The majority correctly sets forth the rule that, under California law, an uncon *986 stitutional portion of a statute can only be severed from statutory text if it is grammatically, functionally, and volitionally severable, regardless of whether the code contains a severance clause. McMahan v. City & Cnty. of San Francisco, 127 Cal.App.4th 1368, 26 Cal.Rptr.3d 509, 513 (2005); MHC Fin. Ltd. P’ship Two v. City of Santee, 125 Cal.App.4th 1372, 23 Cal.Rptr.3d 622, 639 (2005). “All three criteria must be satisfied” for text to be severable from the remainder of the statute. McMahan, 26 Cal.Rptr.3d at 513. However, because California precedent makes clear that none of these criteria are met in this case, I must respectfully dissent from Part II.B of the opinion. Instead, I conclude that Section 2-61 is unconstitutional in its entirety, rather than just in part.
I.
1. Grammatical Severability
Text is grammatically, or “mechanically severable” only when it constitutes “physically separate sections of the proposition.” Santa Barbara Sch. Dist. v. Superior Court, 13 Cal.3d 315, 118 Cal.Rptr. 637, 530 P.2d 605, 618 (1975). Therefore, the majority is mistaken that statutory text embedded in the middle of a sentence is grammatically severable under California law. The fact that “insolent” has a distinct meaning (a conclusion with which I agree) does not mean that it is mechanically distinct in a way that makes it grammatically severable. In fact, the only cases where California courts have determined that text was grammatically severable involved text that was an entirely different sentence or section of the statute, making it grammatically “complete and distinct.” People’s Advocate, Inc. v. Superior Court, 181 Cal.App.3d 316, 331, 226 Cal.Rptr. 640 (1986); see Gerken v. Fair Political Practices Comm’n, 6 Cal.4th 707, 25 Cal.Rptr.2d 449, 863 P.2d 694, 698 (1993) (“Petitioners concede the various remaining parts of Proposition 73 meet the” grammatically separable requirement for the severability test, because the severed portion was an entirely separate provision of the statute); Calfarm Ins. Co. v. Deukmejian, 48 Cal.3d 805, 258 CaLRptr. 161, 771 P.2d 1247, 1256 (1989) (the invalid provision in this case was “distinct and separate” and could be “removed as a whole without affecting the wording of any other provision” (emphasis added)); McMahan, 26 Cal.Rptr.3d at 513 (“appellants conceded] the invalid funding mandate [was] grammatically severable” because it was a completely separate portion of the statute); Barlow v. Davis, 72 Cal.App.4th 1258, 85 Cal.Rptr.2d 752, 757 (1999) (the invalid portion could be severed because it constituted an “entirely separate statute grammatically and mechanically from the invalid substantive provisions”); Briseno v. City of Santa Ana, 6 Cal.App.4th 1378, 8 Cal.Rptr.2d 486, 490 (1992) (the unconstitutional word did “not even appear in [the] section” at issue); Santa Barbara Sch. Dist., 118 Cal.Rptr. 637, 530 P.2d 605 (the text severed was a separate and distinct statutory provision).
The majority cites to no California cases that have allowed one word (and the two surrounding commas) in the middle of a sentence to be grammatically severed. However, at least two California cases dealing with a similar issue refused to sever one unconstitutional word from a sentence. See Cnty. of Sonoma v. Superior Court, 173 Cal.App.4th 322, 93 Cal.Rptr.3d 39 (2009) (refusing to sever the word “unanimous” from the middle of text); Long Beach Lesbian & Gay Pride, Inc. v. City of Long Beach, 14 Cal.App.4th 312, 326, 17 Cal.Rptr.2d 861 (1993) (refusing to follow the city’s request of replacing “may” with “shall” in the middle of a statutory sentence). Indeed, in City of Long Beach, the court determined that neither the offending word “may” nor the remain *987 ing unconstitutional section could be removed to save the ordinance. Id. at 326-327, 17 Cal.Rptr.2d 861. Notwithstanding the majority’s attempts to distinguish these cases, the fact still remains that the California courts were unwilling to sever one unconstitutional word from a sentence in either case.
To alter subsection (a) as the majority desires would be a modification that contravenes California’s prohibition against “affecting the wording of any other provision.” Calfarm Ins. Co., 258 Cal.Rptr. 161, 771 P.2d at 1256; accord Barlow, 85 Cal.Rptr.2d at 757; Maribel M. v. Superior Court, 61 Cal.App.4th 1469, 72 Cal.Rptr.2d 536, 541 (1998). Thus, while the distinct section can be “separated by [a] paragraph, sentence, clause, phrase or even single words,” Barlow, 85 Cal.Rptr.2d at 757, a single word cannot itself be removed from the middle of a clause or phrase to be grammatically severable.
Furthermore, the specific language of “the severability clause [is] considered in conjunction with the separate and discrete provisions of’ the text to determine whether the “grammatical component of the test for severance is met.” Id. Here, the City’s severability clause only states that “sections, paragraphs, clauses and phrases of this Code are severable,” rather than individual words. City of Costa Mesa’s Municipal Code § 1-32. Therefore, the severability clause clearly indicates that the City did not intend something less than a phrase to be grammatically severable, which is also relevant for volitional sever-ability (discussed below).
2. Functional Severability
The majority is correct when it asserts that the constitutionally infirm text must not be necessary to the ordinance’s operation and purpose for text to be functionally severable. Maj. Op. 975-76 (citing City of Long Beach, 14 Cal.App.4th 312, 17 Cal. Rptr.2d 861). However, the testimony of the Chief of Police makes clear that city officials relied on the word “insolent” as a key part of Section 2-61’s purpose of allowing the prohibition of constitutionally protected speech. For instance, when asked whether Section 2-61 “allowed [the police] to arrest the persons insolent,” the Police Chief answered, “Yes.” When asked whether Section 2-61 “was enforced in Costa Mesa” such that it “would be [a] violationf ] of the municipal code” to make “insulting remarks,” the Police Chief also answered “Yes.”
In City of Long. Beach, an official charged with enforcing the ordinance similarly testified that the ordinance could be enforced in an unconstitutional way. 14 Cal.App.4th at 326, 17 Cal.Rptr.2d 861. The California Court of Appeal explained that when “[f|aced with this ambivalence by the official charged with enforcing the section, [courts] cannot depart from its plain language.” Id. (emphasis added). We can do no different here.
3. Volitional Severability
For volitional severability, “[t]he test is whether it can be said with confidence that the [enacting body]’s attention was sufficiently focused upon the parts to be severed [i.e., validated] so that it would have separately considered and adopted them in the absence of the invalid portions.” Gerken, 25 Cal.Rptr.2d 449, 863 P.2d at 699 (alterations omitted). In this case, as in McMahan, the “text of the initiative underscore^] its primary objective.” 26 Cal.Rptr.3d at 514. Here, not only does subsection (a) of Section 2-61 prohibit “insolent” speech, but subsection (b) prohibits “personal, impertinent, profane, insolent, or slanderous remarks” in part (1), as well as “insolent, or disturbing action” in part (6). Because so much of Section 2-61 is aimed at prohibiting expressive speech, *988 and this language is interwoven with language prohibiting disturbances, it is not at all clear that the enacting body’s “attention was sufficiently focused” on the other purpose of only prohibiting disruptive conduct such that this ordinance would have still been passed in its constitutional form. See Gerken, 25 Cal.Rptr.2d 449, 863 P.2d at 699.
Under the volitional severability analysis, courts must also “examin[e] the intended function of [the] particular statutory scheme.” Barlow, 85 Cal.Rptr.2d at 758; Briseno, 8 Cal.Rptr.2d at 490 (analyzing the “overall statutory scheme” to determine legislative intent). Section 2-61 clearly prohibits expressive speech through the word “insolent,” whereas the majority aptly notes that other City ordinances merely prohibit speech that “substantially delays, interrupts or disturbs” a meeting. Maj. Op. 988 (citing Sections 2-60, 2-64). In previous cases, we have explained that, when the enacting body uses language that is distinct from similar statutes, we must give meaning to that distinction. Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908, 937 (9th Cir. 2004). Thus, in Wasden, we held that “the fact that Idaho chose to provide a novel definition, narrower than those given in more than half of its sister states, obligates us to consider what it meant by making that considered choice.” Id.. Similarly here, use of appropriate qualifying language by the City of Costa Mesa in Sections 2-60 and 2-64 demonstrates that the City knew how to effectuate an ordinance aimed merely at preventing meeting disturbances. The City’s choice to go further and prohibit “insolent” speech under Section 2-61 demonstrates a meaningful difference that we cannot ignore, indicating that the City intended the prohibition of “insolence” to be an important aspect of Section 2-61.
The majority also relies on Metromedia, Inc. v. City of San Diego, 32 Cal.3d 180, 185 Cal.Rptr. 260, 649 P.2d 902 (1982), and Katz v. Children’s Hosp. of Orange County, 28 F.3d 1520 (9th Cir.1994), for the proposition that courts can sever a portion of a statute, even when that is contrary to the legislature’s conscious purpose in enacting the statute. Maj. Op. 977 n.ll. However, Metromedia, Inc. actually stands for the opposite proposition. In Metromedia, Inc., the California Supreme Court explained that “we know of no precedent for holding that a clause of a statute, which as enacted is unconstitutional, may be changed in meaning in order to give it some operation, when admittedly it cannot operate as the Legislature intended.” 185 Cal.Rptr. 260, 649 P.2d at 908 n. 10 (emphasis added) (quoting People v. Perry, 79 Cal. 105, 21 P. 423 (1889)). Thus, the court refused to sever portions of a statute where it was “doubtful whether the purpose of the original ordinance is served by a truncated version” and the severance would “leave the city with an ordinance different than it intended, one less effective in achieving the city’s goals.” Id., 185 Cal.Rptr. 260, 649 P.2d at 909. Furthermore, in Katz, the Ninth Circuit was willing to interpret the statutory language “to mean something other than what it says,” only because a previous California court had already interpreted the statute in that way. 28 F.3d at 1531.
The majority’s reliance on the City’s offhanded remark in favor of severance at oral argument (an argument not briefed or raised below) is unavailing, because California courts do not pay attention to a party’s litigation strategy position regarding the party’s preferences for a statute. In fact, in most cases it is likely that where California courts decided an invalid portion of a statute was not severable, the government entity party to the litigation would have preferred severance. See, e.g., Cnty. *989 of Sonoma, 93 Cal.Rptr.3d 39; City of Long Beach, 14 Cal.App.4th at 326, 17 Cal.Rptr.2d 861. Rather, California courts look to what the intentions were of the enacting body at the time of enactment. See Gerken, 25 Cal.Rptr.2d 449, 863 P.2d at 699.
II.
Even if the majority is correct, that Section 2-61 meets one or even two of California’s three severability criteria, the majority’s decision to sever “insolent” cannot be sustained. The failure of a statute to meet any one criteria (grammatical, functional, or volitional severability) provides an independent prohibition on a court’s ability to sever text from a statute. McMahan, 26 Cal.Rptr.3d at 513.
Further, other California cases have cautioned the use of statutory tools such as severability in the First Amendment context when an overbroad statute is at issue. For instance, in People v. Rodriguez, the court explained that “gradually cutting away the unconstitutional aspects of a statute by invalidating its improper applications case by case — does not respond sufficiently to the peculiarly vulnerable character of activities protected by the first amendment.” 66 Cal.App.4th 157, 77 Cal.Rptr.2d 676, 683 (1998). For an “overbroad law hangs over people’s heads like a Sword of Damocles.” Id. (internal quotation marks and alterations omitted); see also In re Berry, 68 Cal.2d 137, 65 Cal.Rptr. 273, 436 P.2d 273, 286 (1968) (finding “the doctrine of severability ... inapplicable” where “a provision encompasses both valid and invalid restrictions of free speech and its language is such that a court cannot reasonably undertake to eliminate its invalid operation by severance or construction” despite the existence of a severability clause). Therefore, I conclude that the word “insolent” cannot be severed from the middle of the phrase in subsection (a).
The majority agrees that subsection (b) of § 2-61 can only pass constitutional muster if it is somehow limited by subsection (a). As in City of Long Beach, 14 Cal. App.4th at 327, 17 Cal.Rptr.2d 861, once subsection (a) is struck down as constitutionally infirm, this results in the “remov[al of] the hub from [the ordinance’s] wheel, and without it the spokes cannot stand.” Id. Thus, I conclude that the invalidation of subsection (a) results in the constitutional collapse of Section 2-61 in its entirety.