**FLORIDA OUTDOOR ADVERTISING, LLC., and Gold Coast Advertising, Inc., Plaintiffs,**

v.

**CITY OF BOYNTON BEACH, Defendant.**

**No. 00CV8577.**

United States District Court,
S.D. Florida.

June 27, 2001.

Gary Ray Rutledge, John Ross Ellis, Rutledge Ecenia Purnell & Hoffman, Tallahassee, FL, Thomas Richard Julin, Hunton & Williams, Miami, FL, Myron D. Cohen, Hunton & Williams, New York City, for Florida Outdoor Advertising, LLC.

Tima Marie Talarchyk, Berger Singerman, Fort Lauderdale, FL, for Gold Coast Advertising, Inc.

Michael Thomas Burke, Johnson Anselmo Murdoch Burke & George, Fort Lauderdale, FL, for City of Boynton Beach.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

MIDDLEBROOKS, District Judge.

THIS CAUSE is before the Court upon cross-motions for summary judgment. The Court has reviewed the extensive factual submissions and excellent memoranda of law filed by the parties, and heard oral argument.

## I. INTRODUCTION

The issue presented in this case is the extent to which the First Amendment to the United States Constitution restricts the authority of local government to enact legislation regulating outdoor advertising. Plaintiffs filed their actions seeking declaratory and injunctive relief and attorneys' fees challenging the City of Boynton Beach's 1997 Sign Code. Plaintiffs move for summary judgment on the grounds that the enactment of the ordinance was an unconstitutional exercise of the City's police power and an abridgment of Plaintiffs' First Amendment rights.

Defendant argues that it is entitled to summary judgment because Plaintiffs' challenges to its 1997 Sign Code are moot due to the enactment of Ordinance 000–78 (the "Ordinance") which repealed or otherwise remedied the contested portions of the 1997 Sign Code. See Boynton Beach, Fla. Ordinance No. 000–78 (January 1, 2001). Alternatively, Defendant argues that the Court can sever any of the challenged portions of the 1997 Sign Code which this Court may find to be unconstitutional from the remaining constitutional portions.

## II. BACKGROUND [1]

The following material facts are not in dispute. Plaintiffs are both outdoor advertising companies. Outdoor advertising companies lease or purchase real estate upon which they erect and maintain billboards, and in turn lease space on billboards to persons or entities wishing to communicate messages to the general public. Customers of outdoor advertising

---

1. The parties, even though the cases have been consolidated, have filed numerous individual pleadings, many of which are virtually identical but for names and dates. For ease of discussion, citations to the pleadings shall refer to the same document in both cases unless otherwise stated. The facts contained in this background section were taken from the Joint Pretrial Stipulations as between Florida Outdoor Advertising and Boynton Beach ("Lead Case") and Gold Coast Advertising and Boynton Beach ("Consolidated Case"). Citations to the individual pleadings shall be to the Lead Case and Consolidated Case as appropriate.

companies use billboards for advertising both commercial and noncommercial matters. Plaintiffs propose to erect varying quantities of "off-premise" billboards on various parcels throughout the City of Boynton Beach.[2]

According to the City, an "Off-Premise Sign" is "[a] sign advertising an establishment, merchandise, service or entertainment, which is sold, produced, manufactured and/or furnished, at a place other than the property on which said sign is located."[3] A "Billboard" is "[a] sign normally mounted on a building wall or freestanding structure with advertising copy which refers to something other than the name and primary character of the business on the premises or is located on a remote site from service of site referred to by the sign copy." *Id.* Under the City's former sign ordinance[4] (the "1997 Sign Code"), such off-premise signs and billboards were prohibited.[5]

On December 16, 1999; January 25, 2000 and May 15, 2000, Florida Outdoor applied for permits to construct fifteen

outdoor advertising off-premise billboards/signs.[6] The City rejected each of these applications. (Lead Case Jt. Pretrial Stip. at 3). On June 5, 2000, and again on July 10, 2000, counsel for Florida Outdoor notified the City of its claim that the City's sign ordinance was unconstitutional. *Id.* On August 3, 2000, Plaintiff Gold Coast submitted five (5) applications to the City for construction of off-premise signs. (Consolidated Case Jt. Pretrial Stip. at 3). The City rejected each of the five applications on August 7, 2000. *Id.* The Plaintiffs then filed these actions.[7]

On January 1, 2001, the City enacted an ordinance amending the 1997 Sign Code (the "Ordinance").[8] In particular, the Ordinance amended the 1997 Sign Code by: (1) adding "aesthetics" and "enhancement of values" to the "Purposes" section of the Sign Code;[9] (2) adding a provision stating that "[a]ny sign containing noncommercial copy shall be deemed an on premises sign, and any sign authorized in this chapter is allowed to contain noncommercial copy in lieu of any other copy (the 'Deeming

**2.** Florida Outdoor Advertising ("Florida Outdoor") submitted fifteen (15) permit applications between December 16, 1999 and May 15, 2000. (Lead Case Jt. Pretrial Stip. at 2–3). Gold Coast Advertising ("Gold Coast") submitted five (5) applications on August 3, 2000. (Consolidated Case Jt. Pretrial Stip. at 3). The City of Boynton Beach (the "City") denied each of these applications. *Id.*

**3.** Art. II, Definitions of the City of Boynton Beach Land Development Code.

**4.** *See* BOYNTON BEACH, FLA., CODE Ch. 21 (1997).

**5.** There were some exceptions to the complete prohibition as to off premise signs as discussed *infra* at 7–8.

**6.** *See* Lead Case Jt. Pretrial Stmt. at 2–3. Two of the applications were actually filed by

Florida Outdoor's predecessor in interest, Florida Outdoor Advertising, Inc. ("FOAI") which was merged into Florida Outdoor Advertising, LLC in February of 2000.

**7.** Florida Outdoor filed its complaint June 28, 2000. Gold Coast filed its complaint August 28, 2000.

**8.** *See* BOYNTON BEACH, FLA. ORDINANCE No. 000–78.

**9.** *See id.* at art.I, §§ 2.D. ("Aesthetically pleasing and do not cause a visual distraction to pedestrians"), 2.E. ("A safeguard and an enhancement to property values within the community") & 2.F. ("Designed to preserve the beauty and unique character of the city") (2001).

Clause')"; [10] and (3) amending the section on "Temporary political signs" to remove the specific temporal limitations and to authorize the posting of temporary political signs "during the period preceding any local, state, or national election." [11]

## III. LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Adickes Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. See Adickes, 398 U.S. at 157, 90 S.Ct. 1598; Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir.1997)(citing Adickes).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the Court must not decide them, it must deny the motion and proceed to trial. See Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co. 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc., 669 F.2d 1026, 1031 (5th Cir.1982); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)("[T]he dispute about a material fact is genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. See Adickes, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. See Brunswick Corp. v. Vineberg, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505.

---

**10.** *Id.* (language following art. I, § 2.F.)

**11.** *See id.* at art. III, § 6.D.

## IV. ANALYSIS

In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Supreme Court set forth the foundation of today's "billboard jurisprudence." [12] Facing what it termed the "problem of applying the broad principles of the First Amendment to unique forums of expression," the *Metromedia* Court had before it an ordinance similar to the one at issue in this case. *Id.* at. The *Metromedia* plaintiffs were billboard owners who sought to enjoin the city of San Diego's enforcement of its billboard ordinance which prohibited all outdoor advertising signs except those advertising goods or services available at a sign's location. The *Metromedia* plurality held that the City of San Diego had a valid interest in traffic safety and aesthetics, and could therefore legitimately regulate commercial speech, but that such interest could not justify distinguishing amongst different types of noncommercial speech based on content. Specifically, because the ordinance provided exceptions to the general ban for some specific noncommercial messages but prohibited other noncommercial messages, the ordinance was found to be facially unconstitutional.

Since *Metromedia*, challenges to similar local billboard ordinances and/or regulations have been numerous and one could even say strategic. Metromedia has not been the "tower of babel" in the sense that Justice Rehnquist envisioned, but has instead been more of a Pandora's Box. Billboard companies, some knowing full well what local ordinance and/or regulatory requirements are, make applications to construct billboards in excess of the size and location requirements contained in such ordinances/regulations. When, as expected, the permits are denied, the companies then file constitutional challenges of the sort presented in this case. This strategic use of *Metromedia*, while unsettling, does not, under existing precedent, permit a deviation from the Constitutional analysis required by *Metromedia* or the vesting decisions of the Eleventh Circuit.

### The 1997 Sign Code

■ The City's 1997 Sign Code regulates all types of signs and outdoor advertising. The Sign Code's purpose is to "create the framework for a comprehensive and balanced system of sign control ... [by authorizing] ... signs which are compatible with their surroundings ... [and not] [d]esigned, installed or maintained in such a manner [so as to] endanger public safety nor contribute to vehicular visual distraction." 1997 Sign Code. art. I. Section 2. To that effort, the 1997 Sign Code completely prohibits billboards and off premise signs with certain exceptions. *Id.* at art. II, §§ 3.T. & 3.W.

The 1997 Sign Code also contains numerous exceptions to the broad rule prohibiting off premises signs by allowing: (1) temporary project development signs for large areas under development (up to two per development parcel with the aggregate sign area not exceeding two hundred fifty

---

**12.** The *Metromedia* case resulted in a plurality opinion that Justice Rehnquist termed the "tower of babel" because of his concern that the opinion would result in cases where city "planning commissions and zoning boards must regularly confront constitutional claims" such as the one in this case, with an opinion (*Metromedia* ) "from which no definitive principles can be clearly drawn." 453 U.S. at 569, 101 S.Ct. 2882 (Rehnquist, J., dissenting).

(250) square feet);[13] (2) temporary construction signs (one (1) non-illuminated sign per construction premise) not exceeding thirty-two (32) square feet;[14] (3) directional signs limited in number to six (6) per civic organization, church, recreational facility not exceeding one hundred forty four (144) square inches per sign for the "convenience of the traveling public,"[15] (4) special civic event, recreational or expositional signs of a temporary nature not exceeding seventy-five (75) square feet in area which are "of a general benefit to the community," "individually approved by the director of development," and subject to removal within five (5) days of the completion of the event;[16] (6) street signs naming subdivisions subject to restrictions placed on all other city street signs;[17] (7) temporary directional signs not exceeding three (3) square feet in area or height or six (6) in number, to "guide traffic to building models at intersections in the city rights-of-way" subject to approval by the City;[18] (8) identification signs for large residential subdivisions, developments or neighborhood associations consisting of no more than two (2) faces and not exceeding sixteen (16) square feet per face, so long as "traffic visibility is unobstructed and the location is approved [by the City];[19]" (9) temporary political signs during the "sixty

(60) day period preceding any local, state, or national election, with the consent of the property owner[20]"; (10) bus-shelter signs pursuant to action by the City Commission in conformity with Fla. Stat. 337.407(2);[21] and (11) temporary banners on private commercial or industrially zoned property within the city.[22]

Plaintiffs claim that the 1997 Sign Code is facially unconstitutional because it: (1) impermissibly favors commercial on premises advertising over various forms of noncommercial speech (such as political advertising); (2) contains content-based exceptions (outlined immediately above) to its wholesale ban on off premises speech that impermissibly discriminates between types of noncommercial speech; (3) is not narrowly tailored to meet the City's asserted interests in traffic safety and maintaining an attractive appearance by distinguishing between on-premise and off premise advertising; (4) is not the least restrictive means by which the City can advance its asserted interests; and (5) violates constitutional standards in its treatment of political speech. *See* Pls.' Mem. Opp'n Summ. J.

More specifically, Plaintiffs assert that the 1997 Sign Code allows commercial signs to permanently advertise the owner

13. *See id.* at art. III, § 6.A.

14. *See id.* at § 6.B.

15. *Id.* at § 6.C(1).

16. *Id.* at § 6.C(2).

17. *Id.* at § 6.C(3).

18. *Id.* at § 6.C(4).

19. *Id.* at § 6.C(6).

20. *Id.* at § 6.D. Temporary political signs are not limited in size, shape or content. "Candi-

dates or parties desiring to post such signs shall file with the city Clerk a notice of intention, to post same prior to the posting of any such sign and shall agree to remove any such signs so posted within ten (10) days after the date of the election." There is no fee required in connection with such signs. And political circulars and handbills may be distributed during the same temporal period.

21. *Id.* at § 6.E.

22. *Id.* at § 6.F.

and property, yet only allows political signs as they are connected with a pending election, and only on a temporary basis. Further, at various locations within the 1997 Sign Code are provisions requiring official approval of signs with no concurrent standards to guide the discretion of the officials administering such provisions.

In addition to these constitutional infirmities, Plaintiffs claim that the challenged provisions are not severable from the ordinance, thereby making the 1997 Sign Code unconstitutional in its entirety. Finally, Plaintiffs assert that because the 1997 Sign Code was unconstitutional in its entirety, they acquired vested rights to construct the billboards, and so are therefore entitled to injunctive relief.

As discussed above, in January of 2001 the City enacted the Ordinance which amended the "purpose" section of the 1997 Sign Code, the regulations governing noncommercial speech, and the provisions regarding temporary political signs. *See* BOYNTON BEACH CODE, CH.21, art. I, § 2 (2001).[23] As amended, the purpose section of the 1997 Sign Code now makes specific reference to safeguarding of property values, aesthetic harmony and cultural and beauty preservation. Additionally, as outlined above, the purpose section now contains the Deeming Clause which provides that "[a]ny sign containing noncommercial copy shall be deemed an on premises sign, and any sign authorized in this chapter is allowed to contain noncommercial copy in lieu of any other copy." *Id.*

Relying on the Supreme Court's *Metromedia* opinion, Plaintiffs challenge the City's 1997 Sign Code's regulation of com-

mercial speech as allowing on premises commercial signs, but prohibiting off premises commercial and noncommercial signs, with some exceptions. The *Metromedia* Court determined that a sign ordinance similar to the one at issue here violated the First Amendment in two ways. The first was that, after considering that commercial speech is afforded less protection than other types of protected speech, and after evaluating the ordinance before them which allowed only on site advertising with various exceptions, the ordinance improperly preferred commercial speech over noncommercial speech, and therefore was in violation of the First Amendment. 453 U.S. at 513, 101 S.Ct. 2882.

Secondly, the plurality held that the exceptions that the ordinance contained to such general prohibitions were also unconstitutional because, ordinarily, the government may not pick and choose to allow various types of noncommercial speech based on content. *Id.* at 514–15, 101 S.Ct. 2882. According to the *Metromedia* Court, by allowing exceptions for signs with noncommercial content, such as news and historical information, but not for other types of noncommercial speech, the ordinance contained impermissible content-based restrictions. *Id.* (noting that "[b]ecause some noncommercial messages may be conveyed on billboards ..., San Diego must similarly allow billboards conveying other noncommercial messages").

Applying this analysis, this Court must find that the City's 1997 is facially unconstitutional. As in *Metromedia,* the 1997 Sign Code favors commercial speech over noncommercial speech by permitting on-site advertising, but prohibiting on premis-

---

**23.** The constitutionality of the 2001 Sign Code amendments immediately set forth herein is not before the Court. Accordingly, the undersigned does not address whether the cure the 1997 Sign Code's alleged constitutional infirmities.

es and off premises noncommercial speech. Likewise, the 1997 Sign Code chooses among various types of noncommercial speech based on content by broadly prohibiting off premises, noncommercial speech, but allowing various exceptions based on the content of the sign.

*Mootness*

■ The City asserts that the Plaintiffs claims are mooted by enactment of the Ordinance. The City's argument that the Ordinance mooted the 1997's constitutional infirmities must fail under Eleventh Circuit precedent regarding vested rights in permit issuance in the face of an unconstitutional sign ordinance. *See Nat'l v. City of Ft. Lauderdale,* Case No. 92–4750, 8 F.3d 36 (Table)(11th Cir.1993)(*National II*) (holding that "when an application for a permit satisfies all existing and pending laws, the permit must then issue: a new law passed after the application was filed has no effect on the matter of issuance. The rule is the same when the existing law is later declared unconstitutional."). *See also Revolution Outdoor v. City of Casselberry,* Case No. 00–10863, 234 F.3d 711 (Table)(unpublished slip op.) (11th Cir. 2000).

The City asserts that the *Revolution* court found that an advertising company's challenge to an unconstitutional sign ordinance may be rendered moot by the subsequent enactment of constitutionally adequate legislation. However, the *Revolution* court found that the advertising company involved in that case did not have vested rights to the issuance of permits because it had not made the applications under the unconstitutional sign

code. Rather, the advertising company's wholly-owned subsidiary had made the applications. The subsidiary had never assigned the rights to such permits/applications to the advertising company challenging the code. *Id.*

The *Revolution* case therefore is distinguishable from the cases at hand. Both Florida Outdoor [24] and Gold Coast in the instant matter filed their permit applications at the time that the City's 1997 Sign Code was in effect. Accordingly, the Ordinance does not dispose of the matter of vested rights as it pertains to these two Plaintiffs, and so the City's mootness assertions must fail.

*Severability*

■ Having found that the City's 1997 Sign Code unconstitutionally differentiates between commercial and noncommercial speech, and that such unconstitutionality is not mooted as to these Plaintiffs, this Court must now address Plaintiffs' assertions that such unconstitutional portions of the 1997 are incapable of being severed from its constitutional provisions. Severability of a local ordinance is a question of state law. *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The doctrine of severability recognizes that federal courts have an affirmative duty to preserve the validity of legislative enactments when it is at all possible to do so. *See Ray v. Mortham,* 742 So.2d 1276, 1280 (Fla.1999).

■ The test for severability requires a determination of whether (1) the unconstitutional provisions [of a challenged ordi-

---

**24.** The City has not attacked the validity of Florida Outdoor, LLC's claims to vested rights which may have arisen through applications filed by its predecessor in interest, Florida Outdoor Advertising, Inc.

nance] can be ... separated from the remaining valid provisions; (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other; and (4) an act complete in itself remains after the invalid provisions are stricken. *Moreau v. Lewis*, 648 So.2d 124, 128 (Fla.1995)(citing *Presbyterian Homes v. Wood*, 297 So.2d 556, 559 (Fla.1974)). It logically follows that when the valid and invalid provisions are so intertwined that excision of the invalid provisions would leave a regulatory scheme that the legislature never intended, severance is improper. *National Advertising Co. v. Town of Niagara*, 942 F.2d 145, 148 (2d Cir.1991). Thus, this Court must determine if the City's 1997 Sign Code can be saved by severing its unconstitutional provisions.[25]

At first glimpse, it would appear that severance would be possible by deleting any copy-based regulations. *See e.g.* BOYNTON BEACH CODE, CH.21 (2001)(striking through content-based provisions) (the "2001 Code"); Redacted Code (DE 46). The City, in its Redacted Code, suggested just that.[26] However, upon closer examination, it is apparent that such the wholesale redactions and excisions provided for in the Redacted Code, are not curative without the additional language of the Deeming Clause contained within the 2001 Code. Specifically, without the Deeming Clause, the Redacted Code would be the same dog, just with fewer or different fleas.[27] It follows then that in order to sever the unconstitutional provisions of the 1997 Sign Code, this Court would have to sever entire sections of the Sign Code.[28] This would involve the creation of a legislative scheme that the City could not have

---

**25.** During oral argument on May 18, 2001, the parties agreed that the main issue presented in this case is whether or not the 1997 Sign Code is subject to severance of its unconstitutional provisions. The Court instructed the City to file its proposal of how the Sign Code could be effectively severed. The City filed its Proposed Redacted Ordinances (the "Redacted Code")(DE 46) on May 21, 2001. The Court instructed the parties that further briefing would be beneficial. The matter has now been fully briefed and is therefor ripe for resolution.

**26.** *See e.g.*, Article II, Sections 2, a through y; Article III, Sections 1, 6. (striking through any content based language).

**27.** For example: Article II, Section 3.T. still prohibits off premises signs. It is only by "deeming noncommercial speech as on premises that City may cure the constitutional infirmity of this provision." Whether or not the deeming language does cure this and other constitutional infirmities is not before the Court.

**28.** The following example demonstrates that such wholesale excision would render the en-

tire Sign Code incapable of achieving what the City so clearly wants it to do (i.e. effectively regulating commercial billboard construction within its jurisdiction). Article II, section 3.T. of the 1997 Sign Code, discussed *supra* n. 12, prohibits all off premise signs with certain content-based exceptions. The City's Redacted Ordinance attempts to strike through the content-based exceptions, but such excision results in an incoherent scheme that the City could not have intended. The Court does not agree that the City's Redacted Ordinance results in only hypothetical ambiguities. To correct the discrimination that this section imposes against off-premise noncommercial signs in favor of on-premise commercial signs, the Court would be required to strike that prohibition entirely. However, the effect of striking the general prohibition against all off-premise signs would be to allow all off-premise signs, including all commercial off-premise signs. Such a result is clearly not what the City intends.

intended.[29]

Further inspection makes it clear that any attempt to sever the unconstitutional provisions from the 1997 Sign Code—those provisions regulating the copy or wording of signs in favor of on premises commercial speech and discriminating among types of noncommercial speech—would encounter the same difficulties encountered by other courts in attempting to salvage similar comprehensive sign codes such as the one herein. *See e.g., Wilton Manors Street Systems v. City of Wilton Manors,* Case No. 00–6186–Civ–Ungaro–Benages (S.D. Fla.2000). The City contends that the task simply requires striking out any content-based reference.

However, like the *Wilton Manors* court, I cannot carry out the extensive section-by-section extractions that would be required to preserve the constitutionality of the City's 1997 Sign Code and leave in place a sensible ordinance that the City would have adopted. In *National Advertising Co. v. Town of Niagara,* 942 F.2d 145 (2d Cir.1991), the court concluded that an ordinance similar to the one at issue here had to be redrafted and that "the Town . . ., not [the] court should do it" because

they were "particularly hesitant to undertake revisions of the ordinance in light of the fact that [they were] a federal court interpreting a local ordinance. The interests of federalism and comity dictate conservatism in imposing our interpretive views on state statutes." 942 F.2d at 151.

Similarly, in *Metromedia, Inc. v. City of San Diego,* 32 Cal.3d 180, 185 Cal.Rptr. 260, 649 P.2d 902 (1982) (*Metromedia II*), reviewing the case on remand from the United States Supreme Court, the California Supreme Court addressed the issue of severability. The *Metromedia II* court concluded that the City of San Diego's ordinance was void in its entirety, despite the presence of a severability clause[30] because severance would have brought about an ordinance quite different from the one contemplated by the legislature at the time of the original enactment. *See id.* 649 P.2d at 909; *City of Wilton Manors* at 10–11.

Further, the *Wilton Manors* court, in addressing a virtually identical constitutional challenge to a local sign ordinance, held that the proposed severance would lead to "the creation of gaps in the ordinance because some of [the unconstitution-

---

**29.** The City argues that "[s]ince the challenged regulation no longer exists, the only . . . application of the proposed redacted ordinance relates to the Plaintiffs' request to construct twenty dual-sided . . . billboards" in violation of the other valid size and place restrictions contained in the 1997 Sign Code. The City appears to argue that the Court may sever the unconstitutional portions of the 1997 regardless of whether the severed ordinance makes sense or is otherwise inconsistent because the ordinance, as severed, will only be applied to these Plaintiffs for the purpose of denying billboard permits. The City has not provided, and the Court is unaware of, any precedent supporting such a proposition.

**30.** The City has pointed out that the ordinance at issue contains a severability clause. While it remains unclear to this Court whether severability clauses contained in sections external to the challenged ordinance are effective as to that ordinance, such dispute is irrelevant. The existence of a severability clause is not determinative of the appropriateness of severance. *See Reno v. ACLU,* 521 U.S. 844, 884 n. 49, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) ("A severability clause is 'an aid merely; not an inexorable command' "); *United States v. Jackson,* 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)(noting that the ultimate determination of severability will rarely turn on the presence or absence of a severability clause).

al] provisions appear mid-sentence ... and others appear in some subsections, but not in others." *Wilton Manors* at 9. Additionally, the *Wilton Manors* court further held that "by severing the provisions that exempt some of the noncommercial signs from the permits process based on content, the ordinance would exempt all signs of any type, size or location containing noncommercial speech." *Id.* at 10. Such complete exemption of noncommercial signs from the permit process could not have been the intention of the city council. *Id.* This case is virtually indistinguishable from *Wilton Manors*.

The City's Redacted Ordinance results in conflicting size requirements for signs exempt from permitting. For example, Article II, Section 2.A. of the Redacted Code provides that any sign not exceeding five square feet in area is exempt from the permit requirements of the code while Article II Section 2.B. exempts residential yard signs, not exceeding three square feet in area. Other reductions similarly appear to provide inconsistent terms, by either allowing and prohibiting the same type of sign, giving two separate size limitations for the same type of sign, or by completely removing a type of sign from any regulatory requirements. *See e.g.* Article II, Sections 2.A., 2. B; Article IV, Section 2.A; Article IV, Section 3 H (allowing one temporary sign for a maximum of thirty days of any size or height).

In an attempt to prohibit the Plaintiffs from receiving permits for the construction of large billboards, the City seems to be asserting that these inconsistencies are inconsequential because the Redacted Ordinance will only be applied against these Plaintiffs. As discussed *supra* note 30,

there is no basis in law or in fact to support such a finding. In the recent case of *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63(2001), the Supreme Court upheld the Court of Appeals for the Second Circuit's finding that a funding restriction imposed by Congress on Legal Services Corporation ("LSC") was unconstitutional as an abridgement of the First Amendment.[31] However, the Court declined to address the issue of whether the Second Circuit had properly severed the unconstitutional provision from the rest of the Legislation because the question was not properly before it on *certiorari*. Justice Scalia, in an informative dissent disagreed with the Majority's unwillingness to address the issue. The Court finds Justice Scalia's reasoning compelling and applicable to the issue of severance in this case. As he so eloquently put it, "[o]ne determines what [the legislature] would have done by examining what it did." *Id.* The City chose to prohibit off premises signs and wanted to provide certain limited exceptions. The Redacted Code does not do that.

Based on the preceding analysis, this Court finds that it cannot sever the provisions that restrict the copy of on premises signs, exempt certain types of noncommercial speech from the permitting process, and allow content-based exceptions to the off premise sign prohibition because the result would be a nonsensical ordinance— not a "comprehensive and balanced system of sign control."

*Vested Rights*

 Having found the City's 1997 Sign Code unconstitutional in its entirety, and

---

**31.** The relevant statute prohibited LSC funding of any organization that represented

clients in an effort to amend or otherwise challenge existing welfare law.

not moot as to these Plaintiffs, this court must now address Plaintiffs requests for preliminary injunctions against the City from enforcing the 1997 Sign Code against it. (Pla.s' Compl. at 1). Plaintiffs' claim they acquired vested rights when the City denied their permits based on the unconstitutional 1997 Sign Code. *Id.* at 9. Relying on *Nat'l v. City of Ft. Lauderdale,* 8 F.3d 36 (11th Cir. Oct.26, 1993)(per curiam)(unpublished table decision no. 92–4750)(National II).[32] Plaintiffs argue that they have vested rights in issuance of all the requested permits because they each made proper applications with the City at a time when no constitutionally valid sign ordinance was in effect in the City. (Pla.s' Memm. Opp'n to Def.'s Mot. Summ.J. at 18).

According to the Eleventh Circuit in *National II,* when a party submits an application for a permit that satisfies all existing and pending laws, the municipality lacks authority to deny the permit, and the permit must issue even when a new law is passed after the application was filed. *National II* at 4,6 (citations omitted); *see also Bhoola v. City of St. Augustine Beach,* 588 So.2d 666, 667(Fla.Dist.Ct.App.1991); *Smith v. City of Clearwater,* 383 So.2d 681, 688–89(Fla.Dist.Ct.App.1980)(stating that an applicant is entitled to a permit which is within the provisions of the existing law as long as the new law that would preclude the intended use is not pending at the time

the application is made).[33] The rule is the same when the existing law purportedly prohibits the desired use, but the existing law is later declared to be unconstitutional. *National II* at 6.

This Court therefore finds that because the City had no valid sign ordinance in effect at the time that the Plaintiffs submitted their applications, the permits should have been issued as long as they were in compliance with the state of Florida's sign regulations then in effect. Consequently, this Court finds that Plaintiffs have vested rights and is, therefore, entitled to injunctive relief.[34]

## V. CONCLUSION

For the foregoing reasons, it is

ORDERED and ADJUDGED that the cross-motions for summary judgment filed by Plaintiffs FLORIDA OUTDOOR ADVERTISING, LLC (**Lead Case DE 23**) and GOLD COAST ADVERTISING, INC (**Consolidated Case DE 28**) are **GRANTED.** The Motion for Summary Judgment filed by Defendant Boynton Beach, Florida (**Lead Case DE19 and Consolidated Case DE 22**) is **DENIED.** Since Chapter 21, Boynton Beach Code (1997) violates the First Amendment, it is unconstitutional and cannot be enforced. Final Judgment shall be entered in favor of the Plaintiffs.

---

32. This is an unpublished opinion and therefore governed by Rule 36–2 of the Eleventh Circuit, which states: "An opinion shall be unpublished unless a majority of the panel decides to publish it. Unpublished opinions are not considered binding precedent. They may be cited as persuasive authority, provided that a copy of the unpublished opinion is attached to or incorporated within the brief, petition, motion or response in which such citation is made."

33. *Cf.* discussion *supra* p. 1208.

34. The Court notes the Plaintiffs' strategic use of constitutional challenge results in an anomalous result. Billboard jurisprudence binds this Court to evaluate sign regulations within the confines set forth herein. Local governments may avoid a similar fate by reviewing and drafting their sign codes consistent with the First Amendment.