**CORAL SPRINGS STREET SYSTEMS, INC., a Florida corporation, Plaintiff,**

v.

**CITY OF SUNRISE, a Florida municipality, Defendant.**

**No. 01–7951–CIV–ZLOCH.**

United States District Court, S.D. Florida.

Feb. 21, 2003.

Thomas Richard Julin, Dorothy Patricia Wallace, Hunton & Williams, Miami, for Coral Springs Street Systems, Inc., a Florida corporation, plaintiff.

Michael Thomas Burke, Johnson Anselmo Murdoch Burke & George, Fort Lauderdale, for City of Sunrise, a Florida municipality, defendant.

## OMNIBUS ORDER

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon the Defendant, City of Sunrise's Motion For Summary Judgment (DE 11) and the Plaintiff, Coral Springs Street Systems, Inc.'s Motion for Final Summary Judgment (DE 15). The Court has carefully reviewed said Motions, the entire court file and is otherwise fully advised in the premises.

### I. *Background*

The Plaintiff, Coral Springs Street Systems, Inc. (hereinafter "Coral Springs") commenced the above-styled cause by filing a Complaint (DE 1) against the Defendant, City of Sunrise (hereinafter the "City") seeking declaratory and injunctive relief and attorney's fees for alleged violations of the First and Fourteenth Amendments to the United States Constitution. Specifically, Coral Springs alleges that on September 6, 2001, it submitted an application to the City for a permit to construct an off-premises outdoor advertising sign within the City of Sunrise. (Compl.¶ 10.) Coral Springs further alleges that on November 13, 2001, the City notified Coral Springs in writing that it had rejected its application for a permit because the proposed sign did not comply with the City's Land Development Code. (*Id.* ¶ 11.) Coral Springs further alleges that the Land Development Code was unconstitutional at the time it submitted its application for a permit, and that it has vested rights under the laws of Florida to the permit it requested from the City. (*Id.* ¶¶ 12–17.) The Court has jurisdiction over the above-styled cause pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

The following material facts are undisputed.[1] Coral Springs is a corporation that leases or purchases real estate upon which it erects and maintains billboards. Once the billboards are erected Coral Springs leases the billboard space to individuals or entities wishing to communicate messages to the general public. Coral Springs also uses the billboards to advertise its own noncommercial public service messages.

On March 17, 1999, Street Information Systems, Inc., another billboard company not involved in the instant lawsuit, entered into a lease agreement with Sawgrass Ford, Inc. (hereinafter "Sawgrass Ford"). (DE 14, Def's App. of Docs., Ex. F.) Sawgrass Ford is an automobile dealership located at 14501 W. Sunrise Blvd., within the City of Sunrise. Under the lease agreement, Sawgrass Ford agreed to lease to Street Information Systems, Inc., for a period of twenty (20) years, a piece of land on its property for the purpose of erecting an outdoor advertising billboard. Specifically, the billboard would be located on the west side of the Sawgrass Ford property alongside the Sawgrass Expressway. On August 1, 2000, Street Information Systems, Inc. assigned its rights, title and interest in the lease to Coral Springs. (*Id.*, Ex. G.)

On September 6, 2001, Coral Springs submitted an application to the City for a permit to erect one off-premises outdoor advertising sign on the Sawgrass Ford property. (*Id.*, Ex. D.) At that time, Chapter 16, article XIV of the City's Land Development Code (hereinafter the "Sign Code") governed the permitting and regulation of signs. On November 13, 2001, the City advised Coral Springs in writing that its application had been denied. (*Id.*, Ex. E.) In response to the denial, Mr. Thomas R. Julin, Esq., counsel for Coral

---

**1.** Unless otherwise noted, the facts are taken from the parties Joint Pretrial Stipulation (DE 27).

Springs, notified the City by letter dated November 25, 2001 that it was Coral Springs' position that the Sign Code was unconstitutional. (DE 17, Pl.'s Exs. in Support of Mot. for Final Summ. J., Ex. 4.) On December 11, 2001, the City amended its Sign Code by adopting Ordinance No. 402–01–K (hereinafter the "Amended Sign Code"). On or about December 31, 2001, Coral Springs filed the instant lawsuit.

In its Motion For Summary Judgment (DE 11), the City argues that (1) Coral Springs' claims are moot due to its enactment of the Amended Sign Code; (2) assuming Coral Springs' claims are not moot, the Sign Code was constitutional at the time Coral Springs submitted its application; (3) to the extent some portions of the Sign Code are declared invalid, such portions can be severed from the valid portions of the Sign Code; and (4) Coral Springs does not have a vested right to the issuance of the building permit. Conversely, in its Motion for Final Summary Judgment (DE 15), Coral Springs argues that (1) the City's Sign Code was unconstitutional on its face on September 6, 2001 when it submitted its application; (2) the invalid portions of the Sign Code cannot be severed from the valid portions of the Sign Code; and (3) it has vested rights to the requested permit.

### II. *Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper

> ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir. 1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Indeed, "the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing on an essential element of the case to which the non-moving party has the burden of proof. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir. 1987). In other words, the standard for granting summary judgment is the same as the standard for granting a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The appellate courts, therefore, will generally affirm the granting of summary judgment if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury. *Id.* at 252–256, 106 S.Ct. 2505; *Barnes v. Southwest Forest Indus., Inc.,* 814 F.2d 607, 609 (11th Cir.1987). The evidence of the non-moving party is to be believed, however, and all justifiable inferences are to be drawn in his or her favor. *Anderson,* 477 U.S. at 255, 106

S.Ct. 2505; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes,* 814 F.2d at 609; *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580, 1582 (11th Cir.1986). Where the moving party properly supports its motion for summary judgment, "the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must, through affidavits or as otherwise provided in Fed.R.Civ.P. 56, designate specific facts showing that there is a genuine issue for trial." *L.S.T., Inc. v. Crow,* 49 F.3d 679, 684 (11th Cir.1995) (internal quotations and citations omitted); *Eberhardt,* 901 F.2d at 1580.

### III. *Discussion*

#### A. *The Sign Code*

The Sign Code was enacted to "create a comprehensive system of street graphic controls, thereby facilitating clear communication, reduced traffic or structural hazards, and an enhanced aesthetic appearance of the city." Sign Code, art. XIV, § 16–247(a). It defines various types of signs. *Id.* at § 16–247(b). An "off-premise sign," such as the one Coral Springs applied for, is defined as "[a]ny sign advertising a commercial establishment, activity, product, service or entertainment, which is sold, produced, manufactured, available or furnished at a place other than on the property on which the sign is located." *Id.* at § 16–247(b)(24). To achieve its purpose of facilitating communication, reducing traffic hazards and enhancing the aesthetics of the city, the Sign Code prohibits certain signs. *Id.* at § 16–248(a). For example, § 16–248(a) prohibits the following signs: animated or flashing signs; banner signs; buntings or flags; off-premises commercial signs or billboards; temporary and permanent signs, other than public interest signs, placed on any public property; and any sign not prescribed as a permitted sign. *Id.* at § 16–248(a)(2), (3), (4), (6), (12) & (16).

At the same time, however, § 16–248(a) excepts certain signs from its prohibition on signs. For example, the following signs are permitted: animated or flashing signs that display the time or temperature; temporary grand opening or special event banner signs; the United States flag; bus shelter or bench signs, and temporary project signs; and temporary and permanent public interest signs. *Id.* at § 16–248(a)(2), (3), (4), (6) & (12).

Other sections of the Sign Code also permit certain signs. Section 16–250, for example, permits certain public interest signs, such as signs placed on bus benches, directional signs for churches and schools, and similar signs that the city commission deems appropriate. *Id.* at § 16–250(a)(1)–(3). Section 16–250 also permits street, traffic, directional, location and roadside memorial signs placed by government agencies, interior lobby or courtyard signs, and no-trespassing or no-dumping signs. *Id.* at § 16–250(b)(1)–(3). Section 16–253(a) permits certain temporary signs, such as grand opening banner signs, model signs, political signs (for a limited time), contractor signs, garage sale signs, project signs, special events signs, and roadside memorial signs. *Id.* at § 16–253(a). The issue for the Court is whether these various sections render the Sign Code unconstitutional.

#### B. *Constitutionality of the Sign Code*

In *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the United States Supreme Court addressed the constitutionality of a sign ordinance similar to the one at issue here. In *Metromedia,* the city of San Diego passed a sign ordinance the purpose of which was to eliminate traffic hazards and to preserve and improve the appearance of the city. *Id.* at 493., 101 S.Ct. 2882 The sign ordinance generally prohibited outdoor advertising displays,

but provided exceptions for onsite signs and signs falling within twelve specified categories. *Id.* at 494, 101 S.Ct. 2882. Onsite signs were defined as those signs "designating the name of the owner or occupant of the premises upon which such signs are placed, or identifying such premises; or signs advertising goods manufactured or produced or services rendered on the premises upon which such signs are placed." *Id.* The types of signs specifically exempted from the ban included "government signs; signs located at public bus stops; signs manufactured, transported, or stored within the city if not used for advertising purposes; commemorative historical plaques; religious symbols; signs within shopping malls; for sale and for lease signs; signs on public and commercial vehicles; signs depicting time, temperature, and news; approved temporary, off-premises, subdivisional directional signs; and '[t]emporary political campaign signs.'" *Id.* at 494–95, 101 S.Ct. 2882.

A majority of the Supreme Court found that the city of San Diego could distinguish between onsite commercial advertising and off-premises commercial advertising by regulating or banning off-premises commercial advertising.[2] Specifically, the Supreme Court found this distinction constitutionally permissible because (1) prohibiting off-premises advertising was directly related to the city's interest in traffic safety and aesthetics; (2) the city may have believed that the changing nature of off-premises advertising presented a more acute problem than onsite advertising; and (3) the city had decided to place greater value on onsite commercial speech than on its interest in traffic safety and aesthetics. *Id.* at 511–12, 101 S.Ct. 2882. The Supreme Court determined, therefore, that "offsite commercial billboards may be prohibited while onsite commercial billboards are permitted." *Id.*

A plurality of the Supreme Court went on, however, to find that the ordinance passed by the city of San Diego violated the First Amendment in two other ways. First, after noting that under the First Amendment noncommercial speech is afforded greater protection than commercial speech, the Supreme Court found that by permitting onsite commercial advertising while generally banning noncommercial speech, the city of San Diego had impermissibly favored commercial speech over noncommercial speech. *Id.* at 513, 101 S.Ct. 2882. Second, the Supreme Court found that by excepting some noncommercial speech from the general ban on noncommercial speech, the city of San Diego's ordinance contained impermissible content-based restrictions. *Id.* at 514–15, 101 S.Ct. 2882.

The lesson of *Metromedia*, therefore, is that a city may constitutionally distinguish between onsite commercial advertising and off-premises commercial advertising by prohibiting the latter. Such a prohibition does not violate the First Amendment. What a city may not do, however, is afford greater protection to commercial speech than to noncommercial speech, nor may a city choose among different forms of noncommercial speech and favor some forms over others. To do so violates the First Amendment. Since *Metromedia* ordinances similar to the one at issue here have been held unconstitutional. *See e.g., Nat'l Adver. Co. v. Town of Niagara*, 942 F.2d 145 (2d Cir.1991); *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir.1996); *Florida Outdoor Adver., LLC v. City of Boynton Beach*, 182 F.Supp.2d 1201 (S.D.Fla. 2001).

---

2. On this point, Justice Stevens joined in Justice White's plurality opinion.

■ After careful examination of the Sign Code, and based upon the Supreme Court's decision in *Metromedia*, the Court finds that the Sign Code is unconstitutional. The Court finds that the Sign Code violates the First Amendment by favoring commercial speech over noncommercial speech because there is no prohibition on onsite commercial signs while certain noncommercial signs are prohibited. *See Metromedia*, 453 U.S. at 513, 101 S.Ct. 2882 (holding that "the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages."). The Court also finds that the Sign Code makes impermissible content-based restrictions by permitting certain noncommercial signs while prohibiting other noncommercial signs. *Id.* at 514, 101 S.Ct. 2882 ("With respect to noncommercial speech, the city may not choose the appropriate subjects of public discourse ...."). For example, public interest signs are permitted on public property while other noncommercial signs are not. Sign Code, art. XIV §§ 16–248(a)(12) and 16–253(a). By permitting some noncommercial signs while prohibiting others, the City has made content-based distinctions. Much like the exceptions for religious symbols, historical plaques, and signs carrying news, time or temperature information found unconstitutional by the Supreme Court in *Metromedia*, the Sign Code's different treatment of noncommercial signs is unconstitutional.

The Court notes that other courts have expressed concerns about lawsuits such as this one in which a plaintiff submits an application for a permit to build a billboard that will assuredly be denied because it does not comply with the ordinance at issue, only to challenge the constitutionality of the ordinance as a whole. *See City of Boynton Beach*, 182 F.Supp.2d at 1206 (noting that "strategic" use of the *Metromedia* decision to challenge local ordinances is "unsettling"); *Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla.*, 213 F.Supp.2d 1312, 1333 (M.D.Fla. 2002) (noting that many courts and commentators are concerned that local governments have been placed in a "tenuous and near impossible position" in drafting a constitutional sign ordinance). The Supreme Court's ruling in *Metromedia*, however, is still binding precedent concerning the First Amendment and billboards and, therefore, this Court must follow that holding. *Ackerley Communications of the Northwest, Inc. v. R.F. Krochalis*, 108 F.3d 1095, 1099 (9th Cir.1997) (noting that where Supreme Court precedent directly controls a case, courts should follow such precedent until the Supreme Court overrules its own decision). The Court, therefore, finds the Sign Code unconstitutional.[3]

### C. *Mootness*

■ The City argues that Coral Springs' claims are mooted by the enactment of the Amended Sign Code. The Eleventh Circuit has held that "[w]hen an application for a permit satisfies all existing and pending laws, the permit must then issue: a new law passed after the application was filed has no effect on the matter of issuance." *Nat'l v. City of Fort Lauderdale*, 8 F.3d 36 (11th Cir. Oct.26, 1993) (per curiam) (unpublished table decision No. 92–4750) (hereinafter "National II").[4] Here, Coral Springs applied for a

---

3. Due to its finding that the Sign Code is unconstitutional on these grounds, the Court does not address Coral Springs' other arguments as to why the Sign Code violates the First Amendment.

4. This is an unpublished opinion. According to Rule 36–2 of the Eleventh Circuit, an unpublished opinion is not binding precedent but may be cited as persuasive authority.

permit prior to the enactment of the Amended Sign Code. The enactment of the Amended Sign Code, therefore, does not effect the issue of whether Coral Springs has a vested right in the permit for which it applied. Thus, the City's argument that Coral Springs' claims are moot fails. *City of Boynton Beach,* 182 F.Supp.2d at 1209.

### D. Severance

■ Because the Court has found the Sign Code unconstitutional, it must now determine whether the ordinance as a whole can be saved by severing the invalid portions from the valid portions. Severability of a local ordinance is a question of state law. *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Federal courts have an affirmative duty to preserve the validity of legislative enactments whenever possible to do so. *Ray v. Mortham,* 742 So.2d 1276, 1280 (Fla.1999). However, "[t]he interests of federalism and comity" dictate that federal courts should act with caution when imposing their "interpretive views on state statutes." *Nat'l,* 942 F.2d at 151.

In deciding whether the Sign Code can be severed, the Court must determine (1) whether the unconstitutional portions can be separated from the valid portions; (2) whether the legislative purpose expressed in the valid portions can be accomplished independently of the invalid portions; (3) whether the good and bad portions are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other; and (4) whether an act complete in itself remains after the invalid portions are stricken. *Moreau v. Lewis,* 648 So.2d 124, 128 (Fla. 1995). If the valid and invalid provisions are so intertwined that the excision of the invalid portions would leave a regulatory scheme that the legislature never intended, severance is inappropriate. *Nat'l Adver. Co.,* 942 F.2d at 148. And while the presence of a severability clause weighs in favor severance, such clauses are not dispositive. *Id.; see also Small v. Sun Oil Co.,* 222 So.2d 196, 199 (Fla.1969) ("When a severability clause is included in the statute ... the expressed legislative intent in this respect should be carried out unless to do so would produce an unreasonable, unconstitutional or absurd result.").

■ Here, the Court notes that the City's Land Development Code contains a severability clause. Land Dev.Code, art. XVIII, § 16–291. The Court, nevertheless, finds that it cannot severe the invalid portions from the valid portions of the Sign Code. The sections and subsections of the Sign Code that result in impermissible content-based restrictions are scattered throughout the Sign Code. For example, the Court would have to excise various subsections from § 16–248, including subsections (2), (3), (4), (12) and (16). The Court would also have to excise § 16–250, which allows for certain public interest signs while prohibiting others. Additionally, the Court would have to excise § 16–253, which allows for certain temporary signs.

In light of the Sign Code's stated purpose "to create a comprehensive system of street graphic controls," the Court finds that it cannot sever the unconstitutional portions of the Sign Code and leave behind an ordinance that the City would have passed or that accomplishes the purpose expressed by the City. Additionally, the Court agrees with the Second Circuit's view that when a local ordinance needs to be redrafted, it is local lawmakers, not federal courts, that should undertake that task. *Nat'l Adver. Co.,* 942 F.2d at 151. Accordingly, the Court finds that it cannot sever the invalid portions from the valid portions of the Sign Code and that the Sign Code must be declared unconstitutional as a whole.

### E. *Vested Rights*

■ Finally, the Court must determine whether Coral Springs has a vested right in the permit it requested from the City on September 6, 2001. As noted above, the Eleventh Circuit has held that when a party submits an application for a permit that satisfies all existing and pending laws, the permit must issue even if a new law is passed after the application was filed. *National II* at 6. Here, the Court finds that Coral Springs has a vested right in the permit it applied for because the City had no valid ordinance in effect on September 6, 2001 when Coral Springs submitted its application. The permit, therefore, should have issued as long as it was in compliance with the state of Florida's sign regulations, as well as any other valid ordinance of the City's in effect at the time Coral Springs submitted its application.[5]

The City argues that Coral Springs does not have a vested right in the permit it applied for because under Florida law the City may revoke such a permit unless the permit holder shows that it acted in good faith upon some act or omission of the government, and that it has made such a substantial change in its position that it would be inequitable and unjust to destroy the acquired right. *Sakolsky v. City of Coral Gables*, 151 So.2d 433, 434–36 (Fla. 1963); *Hollywood Beach Hotel Co. v. City of Hollywood*, 329 So.2d 10, 17 (Fla.1976). The Court notes, however, that the Eleventh Circuit has rejected this argument where a permit to erect a billboard has been unlawfully denied. *National II* at 7–11.

### IV. *Conclusion*

In conclusion, the Court finds that the City's Sign Code was unconstitutional on September 6, 2001 when Coral Springs submitted its application to build an outdoor advertising sign. The Court further finds that it cannot sever the Sign Code. Thus, the Court finds that the Sign Code must be declared unconstitutional as a whole. Finally, the Court finds that Coral Springs has a vested right in the building permit for which it applied.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Defendant, City of Sunrise's Motion For Summary Judgment (DE 11) be and the same is hereby **DENIED**;

2. The Plaintiff, Coral Springs Street Systems, Inc.'s Motion For Final Summary Judgment (DE 15) be and the same is hereby **GRANTED**; and

3. To the extent not otherwise disposed of herein, all pending Motions are **DENIED** as moot.

---

**5.** The Court notes that the City's Amended Sign Code was not in effect at the time Coral Springs submitted its application. The Court, therefore, expresses no opinion on the constitutionality of the Amended Sign Code, and any relief granted by this Order pertains only to the Sign Code in effect at the time Coral Springs submitted its application.